# Pursell *versus* Stover.

1. In an action of trespass *quare clausum fregit*, the defendant may set up, as a defense, a license obtained on a verbal and executed contract, and founded upon a sufficient consideration.

2. Where the act complained of consisted in floating a section of a raft in front of plaintiff's property, tying it to a tree which stood near the water's edge, and then with a pair of horses and a truck driving along the bed of the river attaching the logs to the truck and floating them down to the mouth of the creek:

   *Held*, that the jury was properly instructed to find whether or not the tree was below high water mark, and whether or not the portion of the river over which the truck was driven was covered by water and, in the event of these questions being found in the affirmative, that there was no trespass.

3. Between high and low water mark of a navigable stream, the public have a right of way for the purpose of navigation under which term, as applied to our fresh water rivers, may be included the acts constituting the above alleged trespass.

April 28th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ.  TRUNKEY, J. absent.

ERROR to the Court of Common Pleas of *Bucks county:* Of January Term 1885, No. 108.

Trespass quare clausum fregit, by Benjamin W. Pursell and Elizabeth A., his wife, to the use of the said Elizabeth A. Pursell against Albert Stover and Charles Williams to recover damages for injuries resulting from an alleged trespass upon her realty.   Plea, not guilty.

On the trial, before YERKES, P. J., the following facts appeared: Elizabeth A. Pursell is the owner of a farm in Bucks county which fronts upon the river Delaware and extends for some distance along its banks to the left of where Gallows Run flows into said river.   Stover, one of the defendants, is the owner of a saw mill on the other side of Gallows Run and some distance above its mouth.   When Mrs. Pursell became the owner of the farm she caused printed notices to be posted on the trees in the vicinity, forbidding the landing and tying of logs along her river shore and the passing over her property; a copy of such notice was served upon Stover.   On April 30th, 1883, Stover came down the river with a small float of logs, a portion of a raft which was stored in an eddy near by.   These logs he tied to a tree on the bank in front of or upon Mrs. Pursell's property, and near the mouth of Gallows Run.   Stover then called Williams, the other defendant,

[Pursell *v.* Stover.]

who was on the opposite side of the creek, and he drove across the mouth of the creek with a pair of horses attached to timber wheels, and then along the edge of the river in front of plaintiff's property to where the logs were, and after loading them he drove back the same way.    Mrs. Pursell thereupon brought this action.

Defendants raised three points of defence.    1st, that Stover had a license to use the river and shore in the manner complained of, which license was derived as follows: He showed that originally the saw mill property and plaintiff's land were one farm belonging to one Treichler; that when the mill was sold by Treichler's heirs, of whom plaintiff was one, it was announced at the sale that the purchaser of the mill should "have the privilege of tying logs on the farm, with access to it in order that he might run them down to the creek's mouth to haul them out up to the mill."    This announcement, as was testified by several witnesses, was made with the knowledge and consent of the heirs who were all present, and the result of the privilege being granted was a realization of a higher price.    These privileges were not mentioned in the deed to the purchaser but they were used by him, and when he conveyed to Stover, they were expressly mentioned in the deed.    When Mrs. Pursell was given this farm by an adjudication of the Orphans' Court, she claimed that she had not consented to the granting of these privileges, and notified Stover to stop tying logs upon her property.    Stover's grantors then paid him $1,500 for a release of their liability to him on account of their conveying to him these privileges.

The second defence set up was that he had the right to the use of the eddy and shore of plaintiff's land for the reason that it was made servient to the mill property by Treichler, who carried on the business in this way, and the same was so continued by his heirs previous to the sale of the same.

As a third defence he alleged that he had only used the portions of the property between high and low water mark in a way that the public had a right to use it.

No points were submitted to the court.

The court charged the jury that "a parol license of a privilege, such as this is claimed to be, obtained upon a verbal and executed contract, and founded upon a sufficient consideration, would be pleadable by this defendant in his defence," and, after reciting the facts, the court asked the jury to determine whether the plaintiff had given her assent to the granting of the privilege or had any knowledge of such privilege being connected with or made part of the sale and grant of the mill property; as to the second defence the jury, after being informed what the law required in order to make such

[Pursell v. Stover.]

a servitude as would be a defence, were instructed to inquire whether the evidence made out such a case; as to the third defence the jury was charged, inter alia, as follows: " But if it (the point to which the logs were tied,) is between high and low water marks, or below high water mark, then persons navigating rafts, boats, or other craft, such as are commonly used upon navigable rivers, would have a right to use the embankment or trees to tie to and lie by for such reasonable time as the necessities of their navigation to the mills, or of their business in navigating would require, and if you believe from the evidence, which is for you, that the tree to which the defendant tied was below high water mark, and he tied to it for the period which has been stated, for such a length of time as would enable him to attach to it his trucks, in order to convey his logs from there, then the fact of tying to the tree, in my opinion, would be no trespass, but would be the use of it for such a time only, as was necessary to the enjoyment and exercise of his rights, as a navigator of that river upon that raft."

Verdict for the defendants and judgment thereon. Plaintiffs took this writ, assigning for error the charge of the court.

*George Ross* (*L. L. James* with him), for plaintiffs in error. —A parol license is revocable at the will of the licensor, although a consideration has been paid for it: Dark *v.* Johnston, 5 P. F. S., 164; Huff *v.* McCauley, 3 Id., 206. Subject to the rights of navigation only, the owner of land fronting upon a navigable river is entitled to the uninterrupted and exclusive enjoyment of the real estate to low water mark: Stover *v.* Jack, 10 P. F. S., 340; Wood *v.* Appal, 13 Id., 210; Hartley *v.* Crawford, 32 Id., 486; Kreiter *v.* Bigler, 5 Out., 94. Defendant was not engaged in navigation but in the pursuit of his own business upon land.

*Lewis Stover* (*Henry Lear* with him), for defendants in error. —We admit the owner's right, exclusive of all the world, to the soil, herbage and usufruct of that strip of land between high and low water mark, but he holds it by a different title. His fast land he holds by purchase; this as an incident or accretion to his purchase, subject always to the paramount right of the public to use it so far as it is necessary for the business of ordinary navigation. Pennsylvania in this respect has a law unto herself, and she peremptorily refuses to accept the doctrine of the common law or the laws of her sister states: Stover *v.* Jack, 10 P. F. S., 340. The right of the public to use the eddies and banks of navigable streams for the purpose of making up a raft has been recognized in this State:

Dalrymple *v*. Mead, 1 Grant, 197 ; and there seems to be no reason why the right to take apart a raft should not also be recognized.

Mr. Justice PAXSON delivered the opinion of the court May 25, 1885.

It was not error for the learned judge below to instruct the jury, "that a parol license of a privilege, such as this is claimed to be, obtained upon a verbal and executed contract, and founded upon a sufficient consideration, would be pleadable by this defendant in his defence." The argument for the plaintiff upon this branch of the case rests mainly upon the ground that the evidence of a parol license was insufficient. There is no assignment of error to this point, and if there had been it would have been of no avail, as there was ample evidence to go to the jury and to sustain the verdict. The defendant's mill property and the plaintiff's farm were originally one property, and belonged to Newton Treichler. When the mill was sold by the heirs, of whom the plaintiff was one, it was distinctly announced at the sale that the purchaser of the mill should " have the privilege of tying logs on the farm, with access to it, in order that he might run them down to the creek's mouth, to haul them out up to the mill." This announcement was made with the knowledge and consent of the heirs, who were all present at the sale, and resulted in their getting an increased price for the property. It is true, there was a conflict of evidence upon this point, but the jury have found the facts substantially as I have stated them, and that is, the end of the matter.

The question whether the tree to which the defendant tied his raft was above or below high water mark was fairly submitted to the jury in a clear and impartial manner by the learned judge, and they have found it was below high water mark. Had it been above, the defendant would have been a trespasser; if below, he would not have been a trespasser, and so the learned judge instructed the jury.

The Delaware River is a public highway, and it is settled by abundant authority that the rights of the riparian owner extend to high water mark absolutely, and to low water mark in a qualified sense; that is to say, between high and low water the public have a right of way for the purposes of navigation, which includes all that is reasonably necessary for that purpose : Zug *v*. Com, 20 P. F. S., 138 ; Hartley *v*. Crawford, 32 Id., 486 ; Wood *v*. Appal, 13 Id., 210 ; Stover *v*. Jack, 10 Id., 340 ; Kreiter *v*. Bigler, 5 Out., 94. It follows that when the space between high and low water is actually covered with water, it may be used by the public, because it is a part of the

[Sober v. Standart.]

public highway. This is as far as it is necessary to go in this case, as the defendant did not use any portion of the dry land in getting away his logs. They were attached to a truck in the water, and floated down to the mouth of the creek. This was navigation within the meaning of the term as applied to our fresh water rivers, and the business transacted thereon.

We find no error in this record. Judgment affirmed.