STEELE v. SANCHEZ.

| 72 | 65 |
| 96 | 418 |
| 72 | 65 |
| 109 | 390 |
| 72 | 65 |
| 112 | 98 |
| 72 | 65 |
| 133 | 440 |

1. **Riparian Rights**: NAVIGABLE RIVER AS BOUNDARY: CHANGE WITH HIGH-WATER MARK. By act of congress of August 8, 1846, the Des Moines river at the city of Ottumwa was declared to be a navigable stream, and its banks were meandered when the original government surveys were made. But that act was repealed January 20, 1870. Such repeal, however, did not invest riparian owners with title to the middle of the stream, but their titles continued to be bounded by the ordinary high-water mark; and when the high-water mark was changed by the erosion of the bank, the boundary changed with it. Hence, where a part of a lot adjacent to the stream had washed away, exposing a ledge of rock below high-water mark, the owner of the lot did not own the ledge, and could not recover for stone quarried therefrom. (See opinion for cases cited.)

*Appeal from Wapello Circuit Court.*

SATURDAY, JUNE 18.

THIS is an action to recover the alleged contract price for a quantity of stone which the plaintiff alleges he sold the

defendant. There was a trial by jury, and a verdict and judgment for the defendant. Plaintiff appeals.

*Williams & Jaques*, for appellant.

*Stiles & Beaman*, for appellee.

ROTHROCK, J.—I. It appears from the evidence in the case that the defendant is the owner of about one acre of land lying upon the Des Moines river at the city of Ottumwa. He became such owner in the year 1875. After the purchase was made, the water washed away some twenty feet of the bank of the river, so that the bed of the stream was changed to that extent, and that part of the land originally purchased was covered with the current of the stream. In front of this land, and in the bed of the river below ordinary high-water mark, but within the meander line of the original survey of the lot of which the land was a part, there is a ledge of stone which can be quarried by the building of dams to change the current of the stream and keep the water out. In 1882 and 1883 the plaintiff quarried stone in the river at the place above described, under contract with the defendant, by which he was to pay the defendant fifteen cents a perch for all stone quarried, and payment was to be made by delivering stone to the defendant at one dollar per perch. He delivered the stone for which this action was brought, and demands payment therefor, upon the ground that the defendant is not the owner of the quarry, because it is in the bed of the river below ordinary high-water mark. While working the quarry, the plaintiff did not use any part of the defendant's land as an approach thereto. He obtained the privilege of a road or approach to the quarry from the owner of a lot adjoining that of the defendant.

The main question in the case is whether the defendant was the owner of the stone in the bed of the river. The court instructed the jury as follows upon this feature of the case: "A question arises in this case concerning the power

of defendant to grant to plaintiff the right to quarry stone from land lying within high-water mark of the Des Moines river. You are instructed that the law on that question is as follows: If the land where the stone was quarried was a part of the lands surveyed and disposed of by the United States government, and defendant was at the time the owner thereof, then he had the legal power and authority to grant plaintiff the right to quarry stone there; and this is true, although the soil covering the stone may have been washed away by the waters of the Des Moines river, and the spot where the stone was quarried may have been within high-water mark of that stream." The thought of this instruction is, if the stone quarry was within the original surveyed line, it was the property of the defendant, although the channel of the stream had changed so that the quarry was below the ordinary high-water line; in other words, that the original meandered line of the stream remained as the boundary of defendant's land.

Counsel for the plaintiff combat the rule announced in this instruction, and insist that the defendant has no such ownership in or title to the stone as to authorize him to sell the same. We think the claim of counsel is correct. The Des Moines river was formerly regarded as a navigable stream. It was declared to be such by act of congress, August 8, 1846. When the original government surveys were made, the Des Moines river was "meandered;" that is, the banks of the river were surveyed, and the lines thereof indicated by corners and distances. The river being then a navigable stream, the then owner of the lot now owned by the plaintiff had no title beyond ordinary high-water mark. The title to the whole bed of the river was in the public. *McManus v. Carmichael*, 3 Iowa, 1; *Tomlin v. Dubuque, B. & M. R. R'y Co.*, 32 Id., 106; *Musser v. Hershey*, 42 Id., 356. It is true that by an act of congress passed January, 20, 1870, the act of August 8, 1846, declaring the river to be a public highway, was repealed. But this repealing

act did not invest riparian owners with title to the middle of the stream. The boundaries of their land were not extended thereby. *Wood v. Railroad Co.*, 60 Iowa, 456: *Serrin v. Grefe*, 67 Id., 196. It follows that the defendant could confer no right on the plaintiff to quarry stone in the bed of the river. His title was bounded by ordinary high-water mark. He has certain rights in the land between high and low-water mark, but these rights are peculiar to himself, and are not the subject of transfer or sale, independently of a conveyance of the land to which these rights are appurtenant. *Musser v. Hershey, supra*, and *Phillips v. Rhodes*, 7 Metc., 322.

When, by the action of the water, the river-bed was changed, the line of ordinary high-water mark was changed, and the defendant's ownership, or the line of his land, changed with it. The bank of a stream is what retains the water in its channel; and, if changed either by natural or artificial means, the river bank becomes the line. *Lockwood v. N. Y. & N. H. R'y Co.*, 37 Conn., 387; *New Orleans v. U. S.*, 10 Pet., 662 (711.) It was doubtless the right of the defendant to have prevented the washing away of the bank of the river by means of stone walls or other contrivances; but, not having done so, his boundary line must be regarded as changing with the changes in the banks of the stream. The fact that the "meandered" line was run where the bed of the river now is, does not affect the question. Meandered lines are not boundary lines. They are run merely for the purpose of ascertaining the quantity of land in the fraction subject to sale. *Railroad Co. v. Schurmeir*, 7 Wall., 272; *Kraut v. Crawford*, 18 Iowa, 549.

II. It is claimed by counsel for appellee that plaintiff cannot recover for the stone, upon the principle that a tenant cannot dispute the title of his landlord so long as his possession is undisturbed. Whether that rule is applicable to the facts of this case we do not think we should now determine. There is a conflict in the evidence as to what the contract

really was. The verdict was general; and, as we have seen, the jury were required to enter upon the consideration of the case on what we regard as an erroneous rule as to the rights of the defendant in the bed of the river. Under the instruction above cited, they probably determined the case without considering the question as to the right of the plaintiff to deny the authority of the defendant to dispose of the stone in the quarry.

REVERSED.