John Hohl, Appellant, v. Iowa Central Railway Company and W. S. Keller, Appellees.

**Navigable waters:** RIPARIAN RIGHTS: EXTENT OF OWNERSHIP: AC-1 CRETION. The absolute title of an owner whose land borders upon a navigable stream extends only to the high water mark; yet he has qualified rights below the high water mark that will be protected, among which is the right of accretion, which has some of the attributes of property, and when once vested the owner can only be deprived thereof according to the established rules of law.

**Same:** ACCRETION: PROTECTION OF RIGHT BY INJUNCTION. The rights 2 of a riparian owner to future accretions, when clearly established, will be protected by injunction; but the accretion must begin with the land of the owner who makes the claim and must constitute ·an addition thereto; it cannot start from some other point and finally extend to his land. Thus a sand bar in a navigable stream lying off the main bank of the stream and below high water mark, between which and the bank of the stream there is a connecting body of sand that in times of low water is uncovered, is not an accretion within the meaning of the law, and equity will not restrain the removal of sand from the bar at the instance of the riparian owner.

**Railroads:** EMINENT DOMAIN: USE OF RIGHT OF WAY. Rights acquired 3 by eminent domain cannot be diverted to private uses inconsistent with the purpose of the grant; but the use of a railroad right of way for hauling gravel from a sand bank for transportation over the railroad is a proper use in connection with the operation of the railroad, although the person hauling the same makes a profit therefrom; and the grantor of the right of way cannot object to such use.

*Appeal from Monroe District Court.*—Hon. C. W. Vermilion, Judge.

Wednesday, November 12, 1913.

PROCEEDING in equity for injunction to restrain the removal of sand from a sand bar in the Des Moines river, and to restrain the defendants from using or permitting to be used the right of way of defendant railway company as a wagon road over which to transport sand for shipment on the railway. From a decree denying relief, the plaintiff appeals. —*Affirmed.*

*John F. & Wm. R. Lacey* and *Dashiell & Mason,* for appellant.

*Gillies & Daugherty* and *Townsend & Miller,* for appellee Keller.

*Mabry & Hickenlooper* and *George W. Seevers,* for appellee railway company.

WITHROW, J.—I. The statement of the case which was included in the written opinion filed by the trial court fairly presents the issues and questions involved, and we adopt it here. The plaintiff is the riparian owner of land on the Des Moines river opposite the town of Eddyville. The track of the defendant railway company crosses plaintiff's land on a trestle constituting the approach to a bridge by which it crosses the river. A public highway also crosses plaintiff's land at an angle with the railway, and leads to a wagon bridge over the river, the highway crossing the railroad right of way under the trestle. There is no access from the highway to the water's edge, except over a private way on plaintiff's land or down the right of way along the said trestle. In the river below ordinary high-water mark, along a portion of plaintiff's land, there is a sand bar from which the defendant Keller, prior to the issuing of the temporary injunction herein, had been taking sand. When the stage of water permitted he used a sand pump operated on a boat, and at low water hauled the sand with wagons along the right of way to the

highway and thence over the bridge, to the side tracks of the defendant railway company in Eddyville, where it was loaded on cars and shipped over its road. This action is brought to restrain the defendant Keller from taking sand from the bar, and to restrain both the defendants from using, or permitting to be used, the right of way for hauling sand from the bar. In his petition the plaintiff pleaded his ownership of the land, which he claimed was to low-water mark; that along the shore are extensive sand banks of value, and there is no public access to the same over his land, and that he has been accustomed to sell sand above low-water mark on said stream for his private advantage, as the same belongs to him; and the defendants are arranging to construct a right of way fence on each side of the railway through plaintiff's land to the bank of the river, so as to make a private road or passageway to the sand banks, for the purpose of removing the sand therefrom, and converting it to the use of the defendants. For a considerable distance from the bank of the river the railroad runs on a trestle at a high elevation, and there is ample space to afford the use of the land beneath by plaintiff's stock and vehicles to pass under it. It is further pleaded that the right of way deed under which the defendant railroad company is occupying said land granted no rights beyond those of constructing, maintaining, and operating a railway across plaintiff's land, and that said defendants have not the right to permit it to be used by its co-defendant Keller, for use in the removal of sand. The foregoing sufficiently states the claim of right upon which plaintiff relies. The answers deny that the plaintiff is the owner of the sand, the removal of which is sought to be restrained, or that he has any right or interest therein other than is common to the public, and further state that prior to the time the defendant Keller commenced to use the right of way for the purpose named, plaintiff compelled him to pay a rate per ton for the privilege of hauling sand across plaintiff's land, and that this suit has been instituted only for the purpose of levying tribute

upon the defendant Keller. Defendant Keller pleads that he has at no time taken sand from above high-water mark, nor does he intend to do so, nor to remove any sand necessary to support the banks of the land. It is further pleaded that the use to which the right of way of the railroad is being put is reasonably within the contemplation of the use and operation of a railway. The action was tried to the court, and a decree was entered against plaintiff, from which he appeals.

Whatever may be the motive of appellant in prosecuting this action, his rights must be determined by the rules applicable alike to all, where there is an alleged invasion of right. If that is being done from which it may be found that he suffers injury in his private ownership and control, the assertion of right to be protected against such may not be ignored or denied because it also has the effect of creating conditions which he may reasonably control to the exclusion of others. We first turn to the facts, for upon them as to one branch of the case must rest the conclusions we shall reach as to the legal and equitable rights of the parties.

The place from which the sand has been and is sought to be removed by the defendant Keller is shown by the evidence to be a sand bar lying off the main bank which is the boundary of appellant's land, between which and the bank there is a connecting bed or body of sand which in times of low stage of water is uncovered. No effort has ever been made towards cultivating the land between the sand bar and the main land until about the time of the commencement of this action, when the appellant sowed it to oats, but with poor results. The evidence shows that it is not adapted to agriculture. On the sand bank in question there is a growth of willows covering a small part. The testimony of one witness upon the subject as to the relation of the sand bar to Hohl's land may be taken as fairly summing up all the testimony on that question: "About two-thirds of the bar in front of his farm is above ordinary low-water mark. I believe there is a

1. NAVIGABLE WATERS: riparian rights: extent of ownership: accretion.

portion of it above ordinary high-water mark, if it was not hauled away.'' Another witness testified, in substance, that in times of dry seasons there is not much water on the bar. Others, that the bar has been substantially the same for more than fifty years, and unaffected in growth and height by accretion, nor permanently diminished by the removal of sand for commercial purposes, as it is replaced by succeeding high water. The evidence shows that the bank which constitutes the apparent boundary of appellant's land is about four feet high. Other parts of appellant's lands above the bar have been subjected to loss from washing, with accretions below, but no substantial change has been noticed in the sand bar. Without in more detail setting out the evidence, which is aided by many photographic views, we reach the conclusion of fact that the sand bar is not a part of appellant's land. His right is to hold to ordinary high-water mark, and this would be measured at the bank of the stream. Beyond question between the point so found at the river bank and the bar there is an intervening body of sand which is in times of ordinary high water a part of the bed of the river, and at such times a portion, if not all, of the sand bar bears the same relation to the stream. The Des Moines river being recognized in the law as a navigable stream, as fully decisive of the proposition that appellant owns only to ordinary high-water mark, and not to low-water mark, as claimed by him in his petition, we cite, *Steele v. Sanchez*, 72 Iowa, 65; *Bennett v. Starch Co.*, 103 Iowa, 207; *McManus v. Carmichael*, 3 Iowa, 1; *Musser v. Hershey*, 42 Iowa, 356; *Park Commissioners v. Ice Co.*, 130 Iowa, 607.

While the ownership of the riparian proprietor extends only to ordinary high-water mark, the law recognizes that beyond that he has certain qualified rights incident to his ownership, which will be protected; and it is upon this principle that the contention of appellant is rested as to this branch of the case. Among these qualified rights is that of accretion. *Kraut v. Crawford*, 18 Iowa, 549; *Municipality v.*

*Cotton Press,* 18 La. 122 (36 Am. Dec. 624); *St. Clair v. Lovingston,* 23 Wall. 46 (23 L. Ed. 59); *McManus v. Carmichael, supra; Eisenbach v. Hatfield,* 2 Wash. 236 (26 Pac. 539, 12 L. R. A. 632-641); *Freeland v. Penn Ry. Co.,* 47 Atl. 745. This right, recognized in many cases besides those which are noted above, had early expression in the old rule of the Roman law, which, freely translated, is "Moreover, what the river has added to your land became yours by the law of nature (or nations)."

This qualified right is recognized as having some of the attributes of property, as being valuable; and, while it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and if necessary that it be taken for the public's good, upon due compensation. *Yates v. Milwaukee,* 10 Wall. 497-504 (19 L. Ed. 984). The same principle is recognized in *Bond v. Wood,* 107 N. C. 139 (12 S. E. 281); *Shively v. Bowlby,* 156 U. S. 1 (14 Sup. Ct. 548, 38 L. Ed. 331); *Musser v. Hershey,* 42 Iowa, 362; *Bell v. Gough,* 23 N. J. Law, 624; *Pursell v. Stover,* 110 Pa. 43 (20 Atl. 403).

Relying upon this rule the appellant claims that he is entitled to be protected by injunction, not only against that which he asserts works present injury to his land, but also prevents accretions, which is a valuable right. This claim depends largely upon whether the facts are such that the court should, from them, find that by the acts of the defendant Keller future accretions are prevented, and, if so found, does the law recognize it as a right which may be safeguarded by equity?

2. SAME: accretion: protection of right by injunction.

As to the question of fact we have already stated our conclusion that, under the record—even assuming that appellant's right of present ownership extends to and includes the sand bar, which, however, is not a conclusion the law permits, for appellant's ownership must be measured by the

line of ordinary high-water mark at the bank, and not in some part of the bed of the stream—yet the evidence fails to show conditions which have resulted in accretions to it, or which reasonably may be expected to so result, for they must begin from his land, and not from some other point so as to finally reach it. 29 Cyc. 351.

But, briefly noting the proposition of law upon which appellant's claim is based, we are of opinion that, it being shown that the land of a riparian owner is, and in all reasonable probability will continue to be, benefited by accretions, such is a right, springing out of his ownership, which is entitled to protection; and, when it can be made to so appear with that degree and strength of proof that equity requires, which should be clear and satisfactory evidence, the power of injunction may be employed. Recognition of this principle was first had in our own court in *McManus v. Carmichael*, *supra*, which, while holding that the owner of riparian lands bordering on a navigable river had not such title in the bed of the stream as would enable him to maintain an action from taking sand therefrom, further stated: ''This opinion need not preclude the idea that the adjacent owner may have some rights between high and low water which are even peculiar to himself, and not common. Nor does it necessarily determine the question of the right to make wharves or structures for the convenience of navigation and commerce, and other questions of a similar nature. Nor are municipal powers affected, nor does it imply an unbounded license, on the other side, for every one to do what he pleases, even to the detriment of the owner, nor for an unlimited occupation of the shore. The maxim *'Sic utere tuo ut alienum non lœdas,'* still holds; and the powers of an action on the case, of indictment, and injunction still remain.''

The case of *St. Clair v. Lovingston*, 23 Wall. 46 (23 L. Ed. 59), involved the question of right as to made land or an accretion, and in the discussion the court said: ''The riparian's right to future alluvion is a vested right. The title

to the increment rests in the law of nature." While the question involved in that case related only to an accretion already formed, the statement of principle, which has not at any time been qualified by later decisions of that court, to our minds rests upon a foundation of actual right, its application depending upon the facts in each case. In the case of *Nebraska v. Iowa*, 143 U. S. 359 (12 Sup. Ct. 396, 36 L. Ed. 186), which was brought to determine the boundary of the two states, which had become in doubt because of the erratic, but not unusual, changes in the flow of the Missouri river, the Supreme Court of the United States quoted with approval from Vattel: "For, if I take possession of a piece of land, declaring that I will have for its boundary the river which washes its side, or if it is given me upon that footing, I thus acquired beforehand the right of alluvion." There are courts which hold to the contrary rule that while the riparian owner has the right to accretions, the right to future accretions is not a vested one which may be protected in equity. *Taylor v. Underhill*, 40 Cal. 471; *Eisenbach v. Hatfield, supra.*

Some of the cases cited as holding to this rule determine only that there is in the riparian owner no right below ordinary high-water mark, and do not directly reach the question. But recognizing a division in the authorities, we feel that the equitable rule should be that where there is a right, there should be afforded means for its protection. As to accretion already formed, no protection is needed other than that which is given to all property, for it is tangible. To say that one is entitled to the right of accretions, and to limit the statement to that which already has been formed, must, we think, leave out of consideration that which is known to follow the result of ownership bordering upon running streams, and which is an incident of it. Where it is shown that such right is interfered with, or being destroyed, we hold that the preventive remedy exists.

We have, perhaps more fully than is necessary, considered this latter question, finding as we do that the facts

fail to show that the right of accretion is being affected or destroyed; indeed it might have been passed as a question not now necessary to be determined; but we have been led to the subject by the very full and able discussion of counsel, and have felt that the case warranted the consideration, and that a conclusion would be more than dictum.

II. The defendant railroad company holds its right of way over appellant's land under a deed which granted it for right of way purposes.   The evidence shows that the privilege

3. RAILROADS : eminent do- main : use of right of way.

or license which is granted to Keller by his co-defendant is to haul sand to the station at Eddyville for shipment over the lines of the railway company.   The contention of the appellant is that such use is not in harmony with the purposes of the grant by deed, which grant we take to be no broader than that which might be acquired under condemnation proceedings.

It undoubtedly is true that rights so acquired cannot be diverted to private use inconsistent with the purposes and intent of the grant, nor can it be used by the grantee for other and foreign purposes. *Hodges v. Telegraph Co.*, 133 N. C. 225 (45 S. E. 572) ; *Vermilya v. R. R. Co.*, 66 Iowa, 606.

But it is quite well established by the great weight of authority that where the use to which the right of way is being put is such as to enter and become a part of the means for operating the road, or for facilitating shipments, such is not a misuse of the grant.   *Mich. Cent. v. Bullard,* 120 Mich. 416 (79 N. W. 635) ; *Detroit v. Little,* 146 Mich. 373 (109 N. W. 671) ; *Grand Trunk Ry. Co. v. Richardson,* 91 U. S. 454 (23 L. Ed. 356) ; *Gurney v. Elevator Co.,* 63 Minn. 70 (65 N. W. 136, 30 L. R. A. 534) ; *Anderson v. Mfg. Co.,* 152 Iowa, 455.

The rule has been applied to the various uses incident to the operation of a line of railroad, although not always directly connected with it; and in all such it is held that there is no such misuse of the grant as gives the owner of the fee the right to complain.   When, as in the present case, it is shown that the use to which it is being put, although

affording means of private profit to the individual, as also do warehouses, mills, and granaries, is a means by which there is transported sand from the riverbed to the station solely for shipment over its line, it cannot be held that such use is not a proper one in connection with the operation of the railway. The trial court in passing upon the question said: "It would hardly be disputed that the railway company could construct a side track on the right of way. Having done so, it could, in the prosecution of its business, place cars thereon and allow shippers to haul sand or other freight to be loaded on the cars. I see no difference in such a use and in permitting a shipper to haul his sand or other freight to be loaded on the cars." The quoted statement to our minds is a fair conclusion. We think that as to both questions presented by his appeal the appellant has failed to establish his right to the relief prayed.

The decree of the trial court is *Affirmed*.

WEAVER, C. J., and DEEMER and GAYNOR, JJ., concur.