SARA ANN SHORTELL et al., Appellants, v. DES MOINES ELECTRIC COMPANY et al., Appellees; CITY OF DES MOINES, and STATE OF IOWA, Intervener,

### Appellants.

NAVIGABLE WATERS: Lands under Water—Ownership of State.

1 Riparian owners on a non-navigable stream take to the thread thereof, and on navigable streams, to the high-water mark, and the beds of navigable streams belong to the state.

NAVIGABLE WATERS: Lands under Water—Ownership of Bed

2 Matter of Local Law. Whether title to the beds of navigable streams is in the state, or belongs to the riparian owners to the thread thereof, is a matter of local law, to be determined by each state for itself.

NAVIGABLE WATERS: Navigability—Navigable as Far as Concerns Ownership of Bed. The Supreme Court and several of the state legislatures having treated the title to the bed of the Des Moines River above and below the Raccoon as in the state, that river will, for the purpose of fixing the ownership of the bed thereof and the rights of the riparian owners, be held navigable, though it may be that it will never be used as a waterway for commercial purposes, and that it should not be classed as a part of the navigable waters of the United States under the numerous acts of Congress relating to such waters. Section 2900-a28, Code Supplement, 1913; 28 G. A., Ch. 179; 29 G. A., Ch. 210; 33 G. A., Ch. 66.

NAVIGABLE WATERS: Dams—Right to Maintain—Not Unlawful Obstruction. Where, for 60 years or more, a dam had been maintained, and, by Ch. 179, 28 G. A., the paramount right of the owner to maintain the same recognized, the dam should not be treated as an unlawful obstruction, in a suit by riparian owners to enjoin the reconstruction of a portion thereof which was washed out, and the maintenance of the same across the river.

COURTS: Jurisdiction — Navigable Waters — Federal Statutes. Whether, under act of Congress of September 19, 1890, and amendments thereto, making it unlawful to dam any river or other navigable waters of the United States without first obtaining permission from the secretary of war, the Des Moines River is to be treated as a part of the navigable waters of the United States, is a question for the United States, and not for the state courts, to determine.

NAVIGABLE WATERS: Nuisances—Dams—Sufficiency of Evidence. Evidence reviewed, and held insufficient to show that a public nuisance was created by a dam across the Des Moines River, in a suit by riparian owners to enjoin the reconstruction of a portion thereof and the maintenance of the same.

WATERS AND WATERCOURSES: Nuisances—Prescription—Evidence—Right to Maintain Dam. Evidence reviewed, and *held* that conditions in relation to the use of a dam had existed for many years, with the knowledge and acquiescence of plaintiffs and their grantors, and that any right they may have had to enjoin the maintenance of said dam at its original height, as causing their property to be overflowed by the back water, was barred by the statute of limitations at the time of the commencement of suit, and that the defendants had acquired a pre-

scriptive right to maintain the said dam at its original height, as against the plaintiffs.

**NAVIGABLE WATERS:** Control — Bed and Banks of Navigable 8 Streams. The state may exercise control over the bed and banks of navigable streams and improve the same, subject only to the superior rights of Congress to control their navigation so far as the same may be necessary for the regulation of interstate commerce, and to the superior jurisdiction of Congress, and the state may confer upon a municipal corporation traversed by a navigable stream the jurisdiction to improve its bed in any way not inconsistent with the rights of the public.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE, Judge.

MAY 21, 1919.

SUIT in equity by riparian proprietors to restrain the defendants from repairing and reconstructing the Center Street dam across the Des Moines River in the city of Des Moines. The Des Moines Ice & Cold Storage Company and the state of Iowa intervene. The court dismissed plaintiffs' petition, and also the petition of intervention of the state. Plaintiffs, the state of Iowa, and the defendant city gave notice of appeal.—*Affirmed.*

*Read & Read, Howard W. Byers, Guy A. Miller, C. A. Weaver, Horace M. Havner,* Attorney General, and *James W. Kindig,* Assistant Attorney General, for appellants.

*James C. Hume, Charles S. Bradshaw,* and *Nourse & Nourse,* for appellees.

STEVENS, J.—I. Plaintiffs own certain residences and other property in the city of Des Moines, adjacent to the Des Moines River and north of the Center Street dam. This suit was instituted by plaintiffs for the purpose of enjoining the defendant Des Moines Electric Company, owner thereof, and F. E. Marsh & Company, contractors, from reconstructing a portion of the Center Street dam which

was washed out in 1915, and from maintaining same across the river. It appears that a dam was first constructed across the Des Moines River at about the location of the Center Street dam in 1847, and that a license for the construction and maintenance thereof was issued to Edwin and Edward Hall by the board of county commissioners of Polk County on April 11, 1849, for a period of 50 years. A dam has been maintained at about the place in question by different owners from the time of its original construction to the commencement of this suit. On August 28, 1854, Edwin Hall became the owner of the land on both sides of the river upon which the dam abutted, and on September 15, 1859, conveyed the same, together with the bed of the stream between the banks, to Alexander Williams, the deed describing the land conveyed by metes and bounds, since which time, all conveyances have been to both banks of the stream. Some time between August, 1888, and October, 1890, the dam was rebuilt by the Des Moines Water Power Company, remote grantor of defendant, and in the year 1891, a portion of it having been washed away, it was restored by the Power Company. During the years 1903 and 1904, the dam was again rebuilt, and on January 22, 1915, again partially washed out; and it is to enjoin the reconstruction of the portion of the dam last destroyed that this suit was instituted. The dam was erected and has been maintained by the defendant Electric Company since it became the owner thereof in 1893 for the purpose of providing power for its electric light plant in the city of Des Moines. The dam causes the water in the river to back up for several miles, forming a large body of deep water, used by the public for boating, bathing, skating, and other sports.

Plaintiffs, in their petition, allege that the Des Moines River is a navigable stream; that, when the river is high, the dam causes the same to overflow its banks, and to run

into and fill with mud and debris the cellars and wells on the premises of plaintiffs and others residing in the vicinity thereof, and also causes the gullies and ditches along the streets and low places to be filled with mud, slime, and debris; and that, by reason of said overflow, pools of stagnant water form throughout the locality, and emit foul and offensive odors, injurious to the health of plaintiffs, their families, and the people generally residing in that vicinity, and thereby create a public and private nuisance upon their said premises and the public streets adjacent thereto.

The defendant Electric Company, for answer to plaintiff's petition, avers that a dam has been maintained at the present site thereof since 1847, by itself and grantors, and that the defendant city of Des Moines, on August 28, 1916, in pursuance of authority granted by the twenty-eighth general assembly to it, by resolution of its city council ordered defendant to repair and reconstruct its dam; denies that it is the intention or purpose of defendant to increase the height of said dam, as alleged by plaintiffs in their petition; and avers that the Des Moines River is a non-navigable stream, that defendant owns the banks and bed thereof, on which the said dam rests; and avers that it and its grantors have been for more than 65 years the owners and in possession thereof, during all of which time said dam has been maintained at its height prior to its partial destruction in the spring of 1915; and claims a prescriptive right to maintain the same; and further denies that same constitutes or creates a nuisance, as claimed by plaintiff.

For answer, the city of Des Moines alleges that it has, for many years, contemplated and been engaged in improving and beautifying the banks of the Des Moines River; and that, by Chapter 179, Acts of the Twenty-eighth General Assembly, it was authorized to control, regulate, and improve the beds and banks of said river within the cor-

porate limits of said city; that it has, at great expense, purchased property along said river, and erected concrete walls on either side thereof, and terraced and improved the banks; and that large and expensive public buildings have been erected along and facing said river: and it denies that the dam in any way interferes with or injures plaintiffs.

The Des Moines Ice & Cold Storage Company and the state of Iowa each filed a petition of intervention, the former alleging that it is a corporation organized under the laws of the state of Iowa, and the owner of certain real estate situated north of the Center Street dam, and abutting upon the river; that it became the owner thereof in 1881, since which time it has erected large buildings and other improvements upon its property, for the purpose of housing and vending ice cut from the waters of the river, stored by said dam; and that it has annually cut and housed in said building ice which it has sold to the citizens of Des Moines; that, in addition thereto, it has, at great cost, built under the bed of said river, within the territory covered by the back water from the dam, galleries, conduits, and other appliances for the purpose of filtering water used in making artificial ice for sale; and that all of said improvements have been erected in reliance upon the right of the defendant Des Moines Electric Company and its predecessors to maintain said dam, and alleges that it has acquired a right to have said dam maintained, and asks that said rights be protected by a proper decree herein.

The state of Iowa, for its petition of intervention, adopts and makes a large part of plaintiffs' petition a part thereof, alleges that the Des Moines River is a meandered and navigable stream, and denies that the defendant Electric Company has any right to repair, reconstruct, or maintain the dam in question. Answers were filed to the petition of the state by the Des Moines Ice & Cold Storage

Company and the defendant Electric Company, but no answer was filed by the state to the petition of intervention of the Des Moines Ice & Cold Storage Company.

A trial resulted in a finding by the court below that the river is non-navigable, and in a decree dismissing plaintiffs' petition and the petition of intervention of the state of Iowa. The plaintiffs, the defendant city, and the state of Iowa gave notice of appeal, but the latter has not prosecuted its appeal in this court.

From the foregoing statement, it is manifest that the real controversy in this case is between plaintiffs and the defendant Electric Company, and involves the right of the latter to repair and maintain the Center Street dam. If such right exists, the *status quo* of the Des Moines Ice & Cold Storage Company, intervener, will be fully preserved. The defendant F. E. Marsh & Company is made a party only because, at the time of the commencement of this suit, it had a contract with the defendant light company to repair the dam. In so far as the questions presented for our decision affect the defendant city, they will be referred to and discussed hereafter.

The defendant Electric Company claims the right to repair and maintain the dam, upon the grounds (a) that the Des Moines River above the Raccoon Forks is, in fact and law, a non-navigable stream, and (b) that defendant owns the banks upon which the dam abuts, and the bed of the stream underneath the same, and, therefore, has a common-law right to maintain the said dam, provided it does not materially impair the rights of proprietors above or below the same to the use of the water in its accustomed flow; and contends that the same does not materially impair or affect the rights of such proprietors, and that it has acquired a right, by prescription, to reconstruct and maintain the same at its original height.

On the other hand, it is asserted by plaintiffs that the

river is navigable, and that title to its bed is in the state of Iowa; and they deny that defendants have acquired a prescriptive right to maintain said dam. As the above constitutes the main contentions of counsel, other matters referred to by them in argument will be stated later.

Counsel for the defendant Electric Company have ably and critically reviewed the decisions of this court upon the question of the navigability of the Des Moines River, and pointed out numerous apparent inconsistencies therein. Our attention is called by counsel to the following cases, in which the question of the navigability of the river is referred to or briefly discussed: *Steamboat "Globe" v. Kurtz,* 4 G. Greene 433; *Wood v. C., R. I. & P. R. Co.,* 60 Iowa 456; *Serrin v. Grefe,* 67 Iowa 196; *Steele v. Sanchez,* 72 Iowa 65; *Chicago, B. & Q. R. Co. v. Porter Bros.,* 72 Iowa 426; *Bennett v. National Starch Mfg. Co.,* 103 Iowa 207; *Boehler v. City of Des Moines,* 111 Iowa 417; *Dashiel v. Harshman,* 113 Iowa 283; *Board of Park Comm. v. Diamond Ice Co.,* 130 Iowa 603; *Berry v. Hoogendoorn,* 133 Iowa 437; *Board of Park Comm. v. Taylor,* 133 Iowa 453; *Hohl v. Iowa Cent. R. Co.,* 162 Iowa 66; *Hubbell v. City of Des Moines,* 166 Iowa 581.

*Serrin v. Grefe, Boehler v. City of Des Moines, Park Comm. v. Ice Co., Park Comm. v. Taylor,* and *Hubbell v. City of Des Moines,* supra, deal with the river above the Raccoon Forks, and within the corporate limits of the city of Des Moines; while the other cases relate to controversies below the Forks.

*Serrin v. Grefe,* supra, was an action brought in the name of a riparian owner to recover the value of ice taken by defendant from the river opposite his land. The defendant contended that the river was navigable, and that plaintiffs had title only to highwater mark, and did not own the ice opposite the land owned by him. The court, in the course of its opinion, said:

"It cannot be doubted that the United States government, at the time, and for a long time after, the lands were patented, regarded the Des Moines River as a navigable stream. Surely, the patentee of the land acquired no other rights than those held by a riparian owner of lands adjacent to a navigable stream. In this view, his title extended no further than the bank as 'meandered' by the survey, or to the actual high-water line. It is impossible to discover any legal principle which would require us to hold that the act of Congress repealing the former act declaring the stream to be navigable would extend the title of the patentee so that his land would be bounded by a line following the middle of the stream. This precise point is decided by this court in *Wood v. Chicago, R. I. & P. R. Co.*, 60 Iowa 456, wherein we held that the identical act of Congress in question had no such effect. The plaintiffs, then, have the rights, and no others, of riparian owners of land adjacent to a navigable stream. They do not claim that, as such, they have the exclusive right to the ice found in the river in front of their lands."

The reference by the court to the Des Moines River as a navigable stream, in *Boehler v. City of Des Moines,* was incidental only to the ground upon which the decision is based, and, impliedly only, treats the river as navigable.

In *Board of Park Comm. v. Diamond Ice Co.,* the plaintiff sought to enjoin the defendant from taking ice from the Des Moines River within the limits of the city of Des Moines, the plaintiff claiming authority, under Chapter 179, Acts of the Twenty-eighth General Assembly, to exercise jurisdiction and control over the bed and banks of the river at the point in controversy. The court, in its decision, treats the river as a navigable stream, saying:

"Congress declared the Des Moines River to be a public highway in 1846, but the act was repealed in 1870. The river was meandered, however, and the title to its bed is

conceded to be in the state, in trust for the use of the public. In determining the validity of the act in question, it is necessary, therefore, to look to the rights of the defendants as riparian owners, and to their rights in common with the general public, growing out of the public ownership of the bed of the stream. It is the settled rule in this state that, where the bed of the stream is public property, the owners of land bordering on the stream have no title to the ice which forms thereon, as incident to their ownership of the banks."

Plaintiff's action in *Park Comm. v. Taylor,* supra, was for the purpose of determining whether it had jurisdiction and right to control certain premises claimed by defendant as constituting a part of certain lots owned by him, and to use the same for park purposes. It appears from the opinion that the defendant conceded in the court below that the river was navigable, and that his rights extended only to high-water mark. The court, however, in the course of the opinion, said:

"But as we view it defendants could not, under the record, question the character of the river as navigable; for it is conceded that, in the original government survey, it was meandered, and its character as a navigable stream was thus established, so far as the possible limits of defendants' lots are concerned. The action of the land department of the United States government in meandering the stream and conveying the land bordering on such stream with reference to the meander line is conclusive that the stream was navigable, in such sense that the title of the riparian owners resting on such survey extended, under the rule in this state, only to high-water mark."

The court, in *Hubbell v. City of Des Moines,* assumes that it is, and treats the river as, a navigable stream.

Each of the other cases cited above recognizes and treats the Des Moines River as a navigable stream. In ad-

dition to the numerous declarations by this court that the river is navigable, the legislature, in numerous enactments, has so treated it, and dealt with the bed thereof as belonging to the state.

Chapter 179, Acts of the Twenty-eighth General Assembly, Chapter 210, Acts of the Twenty-ninth General Assembly, and Chapter 66, Acts of the Thirty-third General Assembly, each confers certain authority upon certain municipal corporations, and assumes that the title to the bed of the Des Moines River is in the state, and the rights conferred are based wholly or in part thereon. Section 1, Chapter 179, Acts of the Twenty-eighth General Assembly, is, in part, as follows:

"Wherever now or in the future any public street, highway, public ground, or park, owned by the city of Des Moines or by the public, or owned or controlled by the board of park commissioners of said city, abuts upon either bank of the Des Moines River, the portions of the said river banks on which the same abut situated below high-water mark and also the bed of the river to the opposite shore line thereof, and the river itself within the limits aforesaid, are to be subject to the operation of this act; provided, that the fee title to such bed and banks shall remain in the state, and the vested rights of other riparian owners shall not be affected by this act."

The sections following confer certain power and authority upon the park commissioners to supervise and control the banks and bed of the river and to improve the same, including the right to construct a dam at some point below the present dam, for the purpose of creating a pond suitable for boating, skating, and other sports.

Chapter 210, Acts of the Twenty-ninth General Assembly, applies only to certain cities having a population of less than 25,000, but specifically recognizes the title to the beds of meandered streams as in the state, and declares

that same are under the control of the legislature, and provides:

"That when said commissioners have been so appointed and qualified, the fee simple title to the bed of the meandered stream, separating the corporate limits of the city, for which they are appointed, shall immediately vest in the commission in trust for the public and the same while held by the commission shall be exempt from taxation, provided that the fee title to the channel or bed of the stream to be located and preserved as hereinafter provided shall remain in the state, and provided also, that the vested rights of riparian owners and owners of water powers, shall not be injuriously affected by this act."

In addition to the above, the legislature has authorized and empowered the executive council to sell, lease, or demise any of the islands belonging to the state which are within the meandered banks of rivers therein, except islands in the Mississippi and Missouri Rivers, and to deliver a patent or lease therefor. Section 2900-a28, Supplement to the Code, 1913.

This court has always held that riparian owners on a non-navigable stream take to the thread thereof (*Moffett v. Brewer*, 1 G. Greene 348, 349; *Noyes v. Collins*, 92 Iowa 566; *Foster v. Bussey*, 132 Iowa 640; *Watt v. Robbins*, 160 Iowa 587; *State v. Livingston*, 164 Iowa 31); and on navigable streams to high-water mark (*McManus v. Carmichael*, 3 Iowa 1; *Ingraham v. Chicago, D. & M. R. Co.*, 34 Iowa 249; *Musser v. Hershey*, 42 Iowa 356; *Mills & Allen v. Evans & McCutchin*, 100 Iowa 712; *Chicago, B. & Q. R. Co. v. Porter Bros.*, supra; *Board of Park Comm. v. Diamond Ice Co.*, supra; *Hohl v. Iowa Cent. R. Co.*, supra); and that the beds of navigable streams belong to the state (*Rood v. Wallace*, 109 Iowa 5; *Renwick v. D. & N. W. R. Co.*, 49 Iowa 664; *Noyes v. Col-*

1. NAVIGABLE WATERS: lands under water: ownership of state.

*lins,* supra; *Noyes v. Board of Supervisors,* 104 Iowa 174; *Wright v. City of Council Bluffs,* 130 Iowa 274; *Board of Park Comm. v. Taylor,* supra; *Martin v. Waddell,* 16 Peters 366 [10 L. Ed. 997]; *Shively v. Bowlby,* 152 U. S. 1 [38 L. Ed. 331]; *Illinois Cent. R. Co. v. Illinois,* 146 U. S. 387 [36 L. Ed. 1018]. *Donnelly v. United States,* 228 U. S. 243 [57 L. Ed. 820]). It also held that the repeal of the Act of 1846 did not have the effect to vest title in the riparian owners to the thread of the stream. *Serrin v. Grefe,* supra; *Steele v. Sanchez,* supra; *Chicago, B. & Q. R. Co. v. Porter Bros.,* supra; *Bennett v. National Starch Mfg. Co.,* supra. In the latter case, the court said:

"We are first required to determine whether the premises in controversy are a part of the river bed, or whether they have become a part of Lot 10 by the process of accretion. It is the settled rule in this state that the owners of land bordered by a navigable stream own 'only to ordinary high-water mark,—that is, to the edge of the bank,'—and that the whole bed of the river belongs to the public. *Musser v. Hershey,* 42 Iowa 361. The conveyances through which plaintiff derived title to his lot described the premises conveyed as bounded on the south by the north bank of the Des Moines River, and, although the river is not now regarded as navigable, the rule which limits the ownership of the plaintiff to land bounded by the ordinary high-water mark applies."

What is said above shows that this court and several legislatures have treated the title to the bed of the Des Moines River, both above and below the Raccoon Forks, as in the state; although the Act of 1846 related only to that part of the river below the Forks. It is true that none of the inland meandered streams of this state are now or ever have been extensively used for commercial purposes. Other means of communication, readily available, are better suited to the needs of the people of Iowa; but, in so far as the

title to the beds of meandered streams is concerned, the
court has recognized it as in the state. Whether title to
the beds of navigable streams is in the state,
or belongs to the respective opposite ripar-
ian owners to the thread thereof, is a mat-
ter of local law, which each state determines
for itself. Mr. Justice Pitney, in *Donnelly
v. United States*, 228 U. S. 243 (57 L. Ed. 820), in dis-
cussing this question, said:

2. NAVIGABLE
WATERS: lands
under water:
ownership of
bed matter of
local law.

"The question of the navigability in fact of non-tidal
streams is sometimes a doubtful one. It has been held, in
effect, that what are navigable waters of the United States,
within the meaning of the act of Congress, in contradistinc-
tion to the navigable waters of the states, depends upon
whether the stream, in its ordinary condition, affords a
channel for useful commerce. * * * But it results
from the principles already referred to that what shall be
deemed a navigable water, within the meaning of the local
rules of property, is for the determination of the several
states."

We are not disposed to disturb or overrule the hold-
ing of the prior decisions of this court, as indicated by the
cited cases upon this question, nor disregard the numerous
acts of the legislature referred to, and to
now hold that the Des Moines River, at the
point in question, is a non-navigable stream.
It may be that it will never be used as a
waterway for commercial purposes, and that it should not
be classified as a part of the navigable waters of the United
States, under the numerous acts of Congress relating to
such waters; but, for the purpose of fixing the ownership
of the bed thereof and the rights of riparian owners, the
question must be considered as settled in this state, and
the holding of the court below that the river is non-navi-
gable is disapproved and overruled.

3. NAVIGABLE
WATERS: nav-
igability: nav-
igable as far
as concerns
ownership
of bed.

II.   We come now to the contention of plaintiff that the defendant Light Company has no right to restore the dam to its original height, or to maintain the same across a navigable stream, and to back the flood waters up therein and overflow the public streets of defendant city and the premises of plaintiffs, and thereby create a nuisance. The original dam, constructed in 1847, was maintained under a license granted in 1849 by the county commissioners of Polk County for 50 years, during which period it was reconstructed and erected to the height of the present dam, before a portion thereof was washed out in June, 1915.   No license has been granted, under Chapter 1, Title X, of the Code, to the defendant, authorizing the maintenance of the dam, and no compensation appears to have ever been made to the riparian owners whose land is subject to overflow.

4. Navigable waters: dams: right to maintain: not unlawful obstruction.

Section 2, Chapter 179, of the Acts of the Twenty-eighth General Assembly, conferring certain power upon the board of park commissioners of the city of Des Moines over the bed and banks of the Des Moines River within the corporate limits of said city, provided that:

"Said board shall have power to construct one or more bridges across said river to connect one park with another, or to connect different portions of the same park; and also to construct a dam across said river below the present dam, provided, such dam shall not injuriously affect the water power or dam of the Des Moines Edison Light Company while maintained and kept in proper repair."

The foregoing enactment of the legislature was passed after the 50-year license above referred to had expired.   The purpose of the legislature in granting such authority to the defendant city and other cities having a population of less than 25,000 which are traversed by meandered streams, as may be necessary to enable such cities to improve the bed

and banks thereof for the use and comfort of the people, is clearly reflected in the several enactments above referred to.

It appears from the record that, under the authority conferred upon the defendant city, it has caused concrete walls to be  built on either side of the stream, for a short distance above the mouth of the Raccoon River, its banks to be terraced, and small parks laid out along the banks, and numerous expensive public buildings to be erected fronting upon said river, and, as appears from the portion of Section 2, Chapter 179, Acts of the Twenty-eighth General Assembly, quoted above, the authority of said city is so limited that it can do no act which will interfere with the dam in question.

It is true, that, by the act of Congress passed September 19, 1900 (26 Stat. at Large 454), and amendments thereto, it is made unlawful for any person or corporation to dam any river, or other navigable waters of the United States, without first obtaining permission of the secretary of war. Whether, under this act of Congress, the Des Moines River is to be treated as a part of the navigable waters of the United States, is a question for the United States, and not the state, courts to determine. For more than 60 years a dam has been maintained by the defendant Electric Company and its grantors, at approximately the same location in the river as that now occupied by the defendant's dam, and the twenty-eighth general assembly recognized a right upon the part of the owners thereof to maintain the same, paramount to the authority given to the city to control the bed and banks of the river for the purpose of improving and beautifying the same; and we are, therefore, of the opinion that, so far as the issues presented by plaintiffs' petition are concerned, the dam should not be treated as an unlawful structure.

III.  The record discloses that the property of plain-

5. COURTS: jurisdiction: navigable waters: Federal statutes.

tiffs affected by the back and overflowed waters of the
river is low and level, with a deep, sandy subsoil; and that,
when the river is high, the water rises in
the cellars and wells of the plaintiffs and of
other property owners in the vicinity; that
the storm sewers in that vicinity become
obstructed by the water, and cause the man-
holes to overflow; that, at times, large quantities of water
accumulate in the vicinity, from the rainfall on the adja-
cent upland; and that, in time of extraordinary high wa-
ter, the river overflows plaintiffs' land, and, to some extent,
small ponds form and remain for some considerable time
in the low places. As the water in the river recedes, the
water in the cellars disappears.

6. NAVIGABLE
WATERS :
nuisances :
dams : suffi-
ciency of evi-
dence.

Many years prior to the commencement of this suit, a
large dike was erected near the river, for the purpose of
preventing the lands from being overflowed. This dike has
been maintained and increased in height, from time to time.
Plaintiffs and their grantors have been the owners thereof
and have occupied their property for many years, during
all of which time, except when a portion thereof has been
occasionally destroyed by flood waters, defendant's dam
has been maintained at the same elevation as it had when
a portion of it washed out, in 1915. While vegetation is in-
jured by the overflow water from the river, and, to some ex-
tent, it causes unpleasant odors to arise therefrom, and the
residents in that portion of the city to suffer more or less
injury and inconvenience, this condition has existed for
more than 10 years. The defendant city is not complaining
of the dam, but, on the contrary, by resolution of its city
council, adopted August 26, 1916, directed the defendant
Electric Company to rebuild and restore its dam to its orig-
inal height, declaring that same was in the interest of the
public health and welfare of the people of the city. The
water held back in the river by the dam spreads out over

considerable territory, and is used by the public for bathing, boating, and other sports during the summer season, and in the winter for skating. The maintenance of a dam across the river by the city for the purpose of holding the water back sufficiently to create a suitable depth for bathing, boating, etc., appears to have been a part of the original plan of the defendant city to improve the bed and banks of the river and to beautify the same; and the construction of a dam at the place contemplated, and for which authority was granted by the twenty-eighth general assembly, was found impracticable, because it would interfere with the city sewers emptying therein below the defendant's dam, and with other plans; and the scheme to construct a dam by the city was abandoned, resulting in the city council's adopting the resolution above referred to.

The record does not show that a public nuisance is created by the dam; and, in so far as a private nuisance results therefrom to the plaintiffs, the conditions complained of have existed for many years, with the knowledge and acquiescence of plaintiffs and their grantors; and any right they may have had to enjoin the maintenance of said dam at a height to cause their property to be overflowed from the backwater of the river was barred by the statute of limitations at the time this suit was commenced; and defendants have acquired a prescriptive right to maintain the said dam at its original height, as against the plaintiffs herein. *Bizer v. Ottumwa, etc., Co.,* 70 Iowa 145; *Haisch v. Keokuk & D. M. R. Co.,* 71 Iowa 606; *Fowler v. Des Moines & K. C. R. Co.,* 91 Iowa 533; *Brown v. Armstrong,* 127 Iowa 175; *Irvine v. City of Oelwein,* 170 Iowa 653, 662; *Decorah Woolen Mill Co. v. Greer,* 49 Iowa 490; *Trumbo v. Pratt,* 148 Iowa 195, 197; *City of Waterloo v. Waterloo, C. F. & N. R. Co.,* 149 Iowa 129.

7. WATERS AND WATERCOURSES: nuisances: prescription: evidence: right to maintain dam.

IV. The appellant city of Des Moines complains of

the decree in the court below because the same did not affirmatively define and adjudicate the authority and rights granted to it by Chapter 179, Acts of the Twenty-eighth General Assembly, entitled, "An act to authorize the improvement and regulate the use of the Des Moines River and its bed and banks within the corporate limits of the city of Des Moines." What is said above practically disposes of the questions argued by counsel for the defendant city. The scope and effect of the above enactment has been twice passed upon by this court. *Board of Park Comm. v. Diamond Ice Co.,* supra; *Board of Park Comm. v. Taylor,* supra.

The state may exercise control over the beds and banks of navigable streams and improve the same, subject only to the superior jurisdiction of Congress over the same. The only limitation upon the power of the state to control and improve the same is the paramount right of Congress to control their navigation so far as may be necessary for the regulation of interstate commerce. *Pollard v. Hagan,* 3 How. 212 (11 L. Ed. 565) ; *San Francisco v. Le Roy,* 138 U. S. 656 (34 L. Ed. 1096) ; *Shively v. Bowlby,* supra. And we see no reason why the state may not confer jurisdiction upon a municipal corporation, traversed by a navigable stream, to improve its bed in any way not inconsistent with the rights of the public, or to confer upon such city authority to exercise such control thereof as was sought to be delegated by the act of the legislature above referred to. For the reasons pointed out, and upon the grounds stated, the judgment of the court below is affirmed. In so far, however, as the district court held, and based its decree thereon, that the Des Moines River is a non-navigable stream, its holding and decree are disapproved.—*Affirmed.*

All the justices concur.

8. NAVIGABLE WATERS : control: bed and banks of navigable streams.