## Navigable Waters

KANE, Attorney General, ANDERSON, Assistant Attorney General, YAKOWICZ, Solicitor General, December 30, 1977—This is in response to your request for an opinion concerning the issuance of permits under the Water Obstructions Act for facilities to be located below the low-water mark of a navigable river or stream. Since the Commonwealth owns the bed of the river or stream below the low-water mark, you have asked if it is necessary for an applicant for a water obstruction permit to obtain an easement or other interest in the land from the Commonwealth before the permit can be granted. It is our opinion, and you are advised, that an applicant for a water obstruction permit for facilities extending below the low-water mark of a navigable river or stream must first obtain an easement or other interest in the submerged land below the low-water mark from the General Assembly of the Commonwealth by a duly enacted statute.

To illustrate the problem you have provided us with an example of a recent application to construct a mooring facility in the Ohio River in Beaver County. The facility would consist of a sheet pile cluster and seven pile clusters on one hundred feet centers placed parallel to and thirty feet from the normal pool shore line and would extend for a distance of nine hundred feet. The structure located below the low-water level of the river would amount to the permanent and exclusive use of submerged lands of the Commonwealth. Although the permit has been denied on other grounds, the application has brought to your attention the question, which will come up again, as to whether the department can legally grant a permit for such an obstruction without the applicant having first obtained an interest in the land below the low-water mark from the General Assembly of the Commonwealth.

Title to land located above the ordinary high-water mark of a navigable river or stream is in the riparian owner of such land absolutely. The riparian owner also holds a qualified title to the land located between the ordinary high-water mark and the ordinary low-water mark: Pursell v. Stover, 110 Pa. 43, 20 Atl. 403 (1885). This qualified title is subject to a public navigation servitude: Fulmer v. Williams, 122 Pa. 191, 15 Atl. 726 (1888). While the riparian owner may erect wharves, docks, piers and similar structures between the high and low-water makrs, he cannot interfere with the public's right of navigation: Bailey v. Miltenberger, 31 Pa. 37 (1856). That right is protected by the Department of Environmental Resources pursuant to the Water Obstructions Act of June 25, 1913, P.L. 555, 32 P.S. §681 et seq., which pro-

vides for the issuance of permits. Similarly, the riparian owner has no right to construct docks, wharves, etc. beyond the low-water mark unless he obtains the permission of the Commonwealth: Naglee v. Ingersoll, 7 Pa. 185 (1847).

These rights have been summarized by the Pennsylvania Supreme Court in Philadelphia v. Pennsylvania Sugar Company, 348 Pa. 599, 604, 156 A.2d 653 (1944):

" '(a) . . . a riparian landowner has no property rights qua landowner beyond low-water mark; (b) . . . the title to the land below low-water mark is in the commonwealth; (c) . . . the title to the land of the riparian owner between high-water mark and low-water is subject to the control of the police power of the state; (d) . . . the control below low-water mark is in the state, both because of its police power control over navigable water highways and also its ownership of the land under the water; and (e) . . . whatever easement rights (private or public) exist or may be acquired in and over navigable waters and the lands under them are subject to the control of the police power of the state, . . . so far as the navigable water is over lands in private ownership, and to the added control of the state as a landowner below low-water mark. . . .' " (Quoting United States v. Pennsylvania Salt Manufacturing Co., 16 F.2d 476, 481.) Thus, the Commonwealth has control over the construction of mooring facilities and other water obstructions between the high and low-water marks by virtue of its police power and below the low-water mark by virtue of its police power and also because of its ownership in the bed of the river or stream.

The police power of the Commonwealth in this

regard is exercised by the Department of Environmental Resources pursuant to the Water Obstructions Act of June 25, 1913, P.L. 555, as amended, which provides in section 2 thereof, 32 P.S. §682:

"Except as provided herein, . . . it shall be unlawful for any person . . . to construct any dam or other water obstruction; . . . or in any manner to change or diminish the course, current, or cross section of any stream or body of water . . . without the consent or permit of the [Department of Environmental Resources] in writing, previously obtained, upon written application to said [Department] therefor."

As to the exercise of the Commonwealth's ownership over the river bed or stream bed, it is governed by section 514 of the Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §194, which provides in part:

"(a) Except as otherwise in this act expressly provided, a department, board, or commission, shall not sell or exchange any real estate belonging to the Commonwealth, or grant any easement, right of way, or other interest over or in such real estate, without specific authority from the General Assembly so to do, but a department, board, or commission may, with the approval of the Governor, grant a license to any public service corporation to place upon, in, or over, any dry or submerged land or bridge of or maintained by the Commonwealth, any public service line, if such line will enable any State building or State institution to receive better service . . ."

The Water Obstructions Act is a regulatory statute: Commonwealth v. Pennsylvania Railroad Co., 78 Pa.Superior Ct. 389 (1922); the purposes of

which are to preserve the public's right to navigation; to protect life and property from hazards created by unsupervised placement of water obstructions; to control the obstruction of flood flows; and to protect the regimen of streams.See Comm. Water and Power Resources Board v. Green Spring Company, 394 Pa. 1, 145 A.2d 178 (1958). But before an applicant for a water obstruction permit can be issued a permit for an obstruction below the low-water line, he must secure the permission of the Commonwealth as owner of the land below the low-water line. Section 514 of the Administrative Code, quoted above, requires that specific authority from the General Assembly must be obtained for the grant of an easement, right-of-way, or other interest over or in such land except a license for a public service line to a State building or State institution. It follows that an act of the General Assembly granting an easement, right-of-way, or other interest in land must be enacted authorizing the exclusive use of such land below the low-water mark as a condition precedent to the securing of a water obstruction permit from the Department of Environmental Resources for facilities to be located below the low-water mark of a navigable river or stream.