THE CHICAGO, BURLINGTON & QUINCY R'Y CO. v. PORTER BROS. & HACKWORTH.

THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO. v. THE SAME.

1. **Riparian Rights:** NAVIGABLE RIVER DECLARED NOT NAVIGABLE: TITLE TO BED OF RIVER NOT CHANGED. Owners of land bounded by the Des Moines river when it was in law a navigable stream had no title beyond ordinary high water mark, but the title to the whole bed of the river was in the state; and, after the river had been declared not navigable by act of congress, this did not extend the title of the riparian owners beyond the high water mark. (See cases cited in opinion.)

2. ——: RAILROADS: RIGHT OF WAY OVER BED OF NAVIGABLE STREAM: REVISION OF 1860, § 1328. Under § 1328 of the Revision of 1860, a railroad company was authorized to appropriate to its use for a road bed, without payment of damages, so much of the bed of a navigable stream as was required for its necessary use and convenience; (See *Tomlin v. Dubuque B. & M. R'y Co.*, 32 Iowa, 106,) and, where land was so appropriated, the corporation was entitled to hold and possess, as against the claims of riparian owners, all the land covered by its embankments.

3. ——: ——: TITLE BY ACCRETION. Where a railroad company has lawfully built its embankment in the bed of a river, below the ordinary high water mark, and the high water mark is changed to the further side of the embankment, the riparian owner cannot claim title out to the

OCTOBER TERM, 1887. 427

The Chicago, Burlington & Quincy R'y Co. v. Porter Bros. & Hackworth.

last named high water mark, on the ground that his boundary has been changed by accretion.

3. **Pleading**: PUBLIC STATUTE AS BASIS OF RIGHT. Where a right is claimed under and by virtue of a public statute, it is sufficient for the pleader to allege that he has the right as a matter of law, without setting forth or citing the statute.

5. **Estoppel**: CORPORATION: NOTICE TO OFFICERS: TITLE TO LAND. Expenditure of money under claim of title upon land owned by a corporation does not estop the corporation from afterwards asserting its title as against the persons making the expenditure, where none of the officers of the corporation had notice of such acts.

6. **Equity**: JURISDICTION: INJUNCTION. Equity will enjoin encroachments upon land by making excavations, erecting permanent buildings, and the like.

*Appeal from Wapello District Court.*

THURSDAY, OCTOBER 6.

THESE are actions in equity by which the plaintiffs seek to enjoin the defendants from maintaining a wooden building, and from completing the erection of a brick building, upon land which the plaintiffs allege is within their right of way, and near to their railroad tracks. There was a hearing in the court below upon an application for a temporary injunction. The injunction was allowed as to the brick building, and denied as to the wooden building. The defendants appeal.

*McNett & Tisdale*, for appellants.

*David C. Beaman*, for Chicago, B. & Q. R'y Co.

*Thos. S. Wright*, for Chicago, R. I. & P. R'y Co.

ROTHROCK, J.—I. The two causes were heard and determined in the court below upon the same evidence, and they are presented in this court upon one abstract, and upon the same arguments. The ultimate question involved in both cases is, have the plaintiffs such a right to the land upon which the brick building is in course of erection as to entitle

them to an injunction preventing the defendants from so using the land ?

It appears from the evidence that the railroad now owned by the Chicago, Rock Island & Pacific Railroad Company was constructed in 1859 or 1860, and that the road now belonging to the Chicago, Burlington & Quincy Company was built in 1865. The land in controversy is situated at the city of Ottumwa, on the Des Moines river. The railroads were constructed across a bend in the river, upon land which was below ordinary high water mark. The defendants are owners of the land which was bounded by the river at the point opposite to the lines of railroad. The Chicago, Rock Island & Pacific road was built next to the shore of the river, and the other road further out in the stream. The lines were practically parallel with each other, and about eighty feet apart. The land being below ordinary high water mark, it was necessary to raise embankments upon which to lay the tracks. These embankments were from sixteen to eighteen feet in height, and fourteen or fifteen feet wide on top, with a width of base of from sixty-three to sixty-eight feet. These figures may not be entirely accurate, and there is quite a controversy between the parties as to whether the bases of the two embankments met and overlapped each other. We do not regard this as an important question in the case, because whether the embankments covered the whole of the intervening space or not does not appear to us to be a controlling feature of the case.

The brick building, the subject of the controversy, is situated between the two railroads, and within a few feet of the tracks of the respective roads. It may not be that these tracks are as close to each other as those originally laid. Both roads have side tracks which have been laid since the original embankments were made, but this fact we regard as of no importance in determining the rights of the parties. We think that if it be held that the plaintiffs had the right to appropriate the land, and construct their roads upon it,

OCTOBER TERM, 1887.                    429

The Chicago, Burlington & Quincy R'y Co. v. Porter Bros. & Hackworth.

that right extended at least to the base of the embankment of each road, because the base of the embankment was as much a part of the structure as the ties and iron rails; and the defendants have no right to construct a building which encroaches upon any part of the embankment, whether the attempt is made upon the surface, as made by the defendants, or by using that surface as a base upon which to fill up the intervening space to a suitable height upon which to erect a building. The building in course of erection is so near the tracks of each road that a perpendicular line downward from each end of it would cut the respective embankments as they were originally constructed. The building in question is forty-five feet long.

It is conceded that the railroads were constructed below ordinary high water mark. The Des Moines river was declared to be a navigable stream by act of congress dated August 8, 1846. The defendants or their grantors, being the owners of the land bounded by the river, had no title beyond ordinary high water mark. The title to the whole bed of the river was in the state. *McManus v. Carmichael*, 3 Iowa, 1; *Tomlin v. Dubuque, B. & M. R. R'y Co.*, 32 Id., 106; *Musser v. Hershey*, 42 Id., 356. The act declaring the stream to be navigable was repealed by an act of congress passed January 20, 1870. But this court has three times determined that the repealing act did not invest riparian owners with title to the bed of the river, and that the boundaries of their lands were not extended thereby. *Wood v. Chicago, R. I. & P. R'y Co.*, 60 Iowa, 456; *Serrin v. Grefe*, 67 Id., 196, and *Steele v. Sanchez, ante, p.* 65. In *Wood's case* it was held that the riparian owner could not maintain an action to recover possession of land, being below ordinary high-water mark, from the railroad company, which began to occupy the same with its road bed while the river was yet, in contemplation of law, a navigable stream. That action was against one of the plaintiffs herein, and it is said that the land in contro-

*Margin note: 1. RIPARIAN rights: navigable river declared not navigable: title to bed of river not changed.*

430          SUPREME COURT OF IOWA,

The Chicago, Burlington & Quincy R'y Co. v. Porter Bros. & Hackworth.

versy in that case was near the land in dispute in the suits at bar.

Did the plaintiffs acquire any right to that part of the bed of the river by appropriating the same for the use of their roads? Section 1328 of the Revision of 1860, which was in force when the plaintiffs' railroads were constructed, is as follows: "Any railroad corporation shall be authorized to pass over, occupy and enjoy, without payment of damages, any of the school, university, and saline or other lands of this state: provided, no more of such lands shall be taken than is required for the necessary use and convenience of such corporation."

*2. ——: railroads: right of way over bed of navigable stream: revision of 1860, § 1328.*

In the case of *Tomlin v. Railroad Co., supra,* the defendant constructed its railroad along the Mississippi river, below ordinary high-water mark. Tomlin, the riparian proprietor, claimed that he was entitled to damages by reason of the construction of the road. It was held that he had no cause of action. The decision was based upon the idea that the railroad was constructed under legislative authority. It is true, as claimed by counsel for appellant, that the section of the statute above cited is not quoted in the opinion. But, as there was no other act of the legislature then in force granting that right, this provision of the statute must have been in the mind of the court. That such was the fact is recognized in the case of *Renwick v. D. & N. W. R'y Co.,* 49 Iowa, 664.

It appears to us that there can be no doubt that the cited statute authorized the construction of the plaintiffs' roads, and that they acquired the right thereunder to hold and possess at least the full width of land which they actually appropriated by their embankments, as against all claims of the owners of land bounded by the river.

But counsel for the defendants claim that the land upon which they propose to erect and maintain the brick building was made by accretion. The technical definition of accretion, as defined by Bouvier, is "the increase of real estate by the addition of portions of soil by

*3. ——: title by accretion.*

gradual deposition, through the operation of natural causes, to that already in possession of the owner." It may be that an owner of real estate bounded by a stream may have the right to construct walls or other contrivances to prevent encroachments of the stream upon his land, and by these artificial additions to the banks he may use the land below ordinary high-water mark. But we do not think any right by accretion attached to the land in controversy. If the claim be well founded, all of the land now occupied by both railroads is the property of the defendants, under the doctrine of accretion, and the line of defendants' land is the present high-water mark of the Des Moines river. We have seen that the roads were lawfully constructed upon the public lands of the state, and the defendants have no title nor right thereto. And it is equally untenable to claim that the defendants have any right to take possession of any land across the land appropriated by the Rock Island Railroad Company, and erect a building between the two roads. The lawful appropriation of the land by the Rock Island Railroad Company cut off accretions to defendants' land, and established a line beyond which no right by accretion can be acquired. To so hold would invest the defendants with the title to a tract of land between the railroads in no manner connected with their land upon the shore of the river.

II. The above considerations dispose of the question as to the ownership and right of possession of the land in controversy, abstractly considered. But the defend-

4. PLEADING: public statute as basis of right.

ants claim that the plaintiffs have no right to an injunction, because they did not allege in their pleadings that they took and held the land under the provisions of the statute above cited. This was not necessary. They did aver that they had the "legal right to take, hold, use and occupy a right of way 100 feet wide" over the land in controversy. The legal right was based upon a public statute of the state, which it was not necessary to set forth or cite in the pleadings.

III.   There were certain deeds made by riparian owners, and the defendants deposited earth between the railroads to **5. ESTOPPEL: corporation: notice to offi- cers: title to land.** bring the surface up to a level with the railroad tracks.   It is claimed that these acts estop the plaintiffs from now making claim to the land. We do not think, in view of the evidence, that the doctrine of estoppel can have any application.   There is nothing in the record showing that any officer of the plaintiffs had.any knowledge that any claim to the land was made by the defendants until the commencement of the erection of the building.

IV.   It is further claimed that injunction is not the proper remedy ; that the action should have been at law, for dam- **6. EQUITY: jurisdiction: injunction.** ages.   We do not think this position is well taken.   There can be no doubt that equity will enjoin encroachments upon land by making excavations, erecting permanent buildings, and the like.

In our opinion the injunction was rightly granted.

AFFIRMED.