JACOBS, Respondent, vs. LAKESIDE LUMBER COMPANY, Appellant.

*December 13, 1907—January 8, 1908.*

*Injunction: Trespass: Irreparable injury: Failure of trial court to adjudicate on counterclaim: Appeal and error: Questions considered.*

1. A town owning a lot granted the use of it to plaintiff, who was under contract to furnish power for the city's water and electric light plant, and also granted plaintiff permission to maintain and operate a private manufacturing plant thereon. Subsequently the town granted the defendant permission, against the plaintiff's objection, to dig a trench and lay a steam pipe across the lot to connect defendant's mill with its own power plant. The evidence disclosed that the acts of the defendant would result in only slight interference with plaintiff's possession and for only a short time, and there was nothing to show interference with the plaintiff in the operation either of his own business or that of the town, or that plaintiff would suffer any substantial damage. *Held:*

(1) The defendant's acts constituted at most a technical trespass upon plaintiff's right to occupy the lot.

(2) The injury to plaintiff was of such nature as to be adequately redressed in an action for damages.

(3) The threatened injury was not irreparable in its nature nor a continuous or repeated invasion of plaintiff's rights.

(4) No ground for equitable interference by way of injunction was established.

(5) Judgment dismissing the complaint should have been awarded. TIMLIN, J., dissents.

2. It is not error for the trial court, in awarding plaintiff judgment, to disregard defendant's counterclaim, where the defendant had commenced an independent action against the plaintiff for the same relief demanded in the counterclaim and judgment in both actions was awarded the same day.

3. In such case, separate appeals having been taken from both judgments and the causes having been submitted together, the issues involved in the counterclaims are *held* disposed of by the conclusion on the issues raised on the appeal from the judgment in the other action.

APPEAL from a judgment of the circuit court for Washburn county: A. J. VINJE, Circuit Judge. *Reversed.*

This is an action whereby plaintiff seeks to restrain the defendant from digging a trench and laying a steam pipe therein across a lot in the unincorporated village of Shell Lake, Washburn county. The plaintiff alleges that he is in the possession of a lot owned by such town under a contract with the town authorities to occupy this lot and the buildings thereon. The lot and buildings are used for the maintenance and operation of a water and electric light plant for the village. It is also alleged that, pursuant to ch. 40, Stats. (1898), the town board was duly authorized to exercise the powers of a village board, and that at the town meeting of 1903 the town board was authorized to contract for the operation of the water and light plant for the benefit of the people of the village. On February 6, 1904, a contract was executed by the plaintiff and the town board, wherein it is agreed that the plaintiff, for the period of ten years, will "furnish all power necessary for pumping water from Shell Lake into the mains, cross-mains, and pipes, and will pump water therefrom into the water mains, pipes, and cross-mains as they are now laid, or may hereafter be laid, within the town of Shell Lake, for the use of citizens as now used, for use in case of fire, and for general use, night and day, and to furnish a good and sufficient power at all times for the purpose of pumping said water and in such manner as to give good, sufficient, and satisfactory service." And it is agreed that the plaintiff "will furnish all fuel necessary for pumping water as aforesaid, and will keep in good and sufficient repair all pumps, engines, and boilers used in and about" the plant situated on the town lot, and that for such service for the first year plaintiff should receive $125 per month and the regular rental received for pumping water for the railway company. If an electric light plant should be constructed within a year, plaintiff, for performing the service of operating the municipal plant, was to be paid at the rate of $2,500 per annum in addition to the water rental from the

railway company. In case no electric light plant should be so constructed, then plaintiff's salary, in addition to the rental for water furnished the railway company, was to be $2,000 annually after the first year. It was also stipulated, in the event that the electric light plant should be constructed, that plaintiff was to "furnish the power to pump said water and operate said electric light plant, furnishing all fuel therefor and caring for said pump and engine as aforesaid, doing all of said work in a good and workmanlike manner, and keeping all of said pumps, engines, and boilers in a good and perfect condition for operation," and plaintiff should "be permitted (during the life of the contract) to maintain and operate upon said premises, and use said power therefor, a sawmill, planing mill, grist mill, machine shop, or other plant, . . . so long as the same does not interfere with the operation of the water or electric light plant, or furnishing power for the same, . . . no structure of any kind to be built within thirty feet of . . . the . . . power house." In case the electric light plant should be established, the town "retains the right of possession of so much of the premises as shall be necessary for the instalment, equipment, and operation of said electric light plant." On February 6, 1904, plaintiff took possession of the property and operated the plant under the contract, and, at a distance of about thirty feet from the town's power house, erected a saw and planing mill, and connected such mill with the town power plant by a steam pipe laid under the ground. On September 11, 1905, the town board adopted a resolution that defendant "be permitted to lay a steam pipe across the town lot, occupied by the town pumping station, . . . said pipe to lay at least three feet under ground and not in any way to interfere with the town property. The town reserves the right to take up said steam pipe if at any time it would become necessary to use the ground for any other purpose." No valuable consideration was demanded by or paid to the town for this privilege. On

October 16, 1905, defendant entered on the town lot and dug a ditch about three feet in width and depth about half way across the lot, and laid a six-inch tiling therein to hold the steam pipe. The defendant threatened and intended to dig such trench and to lay such tiling and steam pipe therein entirely across the lot. The trench was to be refilled with the excavated earth to the level of the original surface of the lot, and the steam pipe was to be used by the defendant for transmitting steam from defendant's steam plant, situate on the lot adjacent to the town lot on one side, to its mill, situate on the lot adjacent to the other side of the town lot. Plaintiff alleges that if defendant is permitted to lay its steam pipe across the town lot, as it intends and threatens to do under the resolution of the town board, it will seriously interfere with him and cause him serious and permanent injury in carrying out his contract with the town, and will prevent him from exercising his rights and privileges under the contract. The court awarded judgment granting an injunction restraining the defendant from laying the steam pipe as contemplated. This is an appeal from such judgment.

The cause was submitted for the appellant on the brief of *W. N. Fuller.*

*A. L. Bugbee,* for the respondent.

SIEBECKER, J.    Many of the contentions of the parties need not be treated in view of considerations determinative of plaintiff's right to maintain the equitable action for an injunction. Plaintiff asserts that defendant's threatened entry on the lot to dig the trench and to lay the steam pipe across it will seriously interfere with him and injure him in his rights under the contract with the town, and will cause him irreparable loss. The court found as a fact that "the laying of said steam pipe across said lot would probably seriously affect and injure the plaintiff in carrying out his contract with the town," and held that defendant acquired

no right under the resolution of the town board to lay such pipe across the town lot. Plaintiff's right to an injunction must rest upon the ground that, if defendant is permitted to lay the pipe across the town lot, it will do him an irreparable injury. As above stated, the court did not find what injury plaintiff would suffer if this pipe should be laid as threatened. It appears from the evidence that the plaintiff has erected a saw and planing mill on the town lot and is in possession thereof to run the water and light plants and his private enterprise under the agreement with the town. It is claimed that if the defendant is permitted to continue its trespass upon this lot it will seriously and vexatiously interfere with plaintiff's operation of the town plants and his private power and mill plants and cause him an injury which cannot be adequately remedied at law. An examination of the evidence discloses that the only invasion of plaintiff's rights which could result from defendant's digging the trench and laying the steam pipe would be a slight interference for a short period with his possession of that portion of the lot so occupied by the defendant for this purpose. There is nothing to show that such occupation of the lot by the defendant would actually interfere with plaintiff in the operation of either his own business or the business of the town. We find nothing in the evidence showing that plaintiff is likely to suffer any substantial damages in his right to occupy the premises for the purpose of executing his contract obligations. The claim that the use of the steam pipe by the defendant would interfere with and injure any part of the water, electric light, or his private plant is not sustained by the evidence. Hence his only cause of complaint must be that defendant has technically trespassed upon his right to occupy the town lot for the purpose of operating these power, light, and mill plants. The injury resulting from the unlawful disturbance of the soil by digging and laying a pipe across the lot, though serious to the town as owner of the lot, results in but slight tres-

pass upon plaintiff's rights, and is of a nature which can be adequately redressed in an action for damages. Therefore it cannot be said that the threatened injury is irreparable in its nature. Nor is it a continuous or repeated invasion of plaintiff's rights. Under such circumstances, no ground for equitable interference by way of preventive relief is established, and judgment dismissing the complaint should have been awarded. 1 High, Inj. (4th ed.) § 701; *Smith v. Oconomowoc,* 49 Wis. 694, 6 N. W. 329.

The court disregarded the defendant's counterclaim for relief restraining plaintiff from interfering with defendant in its attempt to lay the pipe across the lot. This course was probably followed because defendant had commenced an action against plaintiff for such relief upon the same cause of action as here alleged. The court tried that case and awarded judgment on the same day that judgment was entered in this action. An appeal was taken from the judgment in that action to this court and both causes were submitted together on the appeal in this court. The issues involved in that case dispose of the questions raised by the counterclaim and are determined on that appeal, which is decided herewith.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions that the court award judgment dismissing the complaint.

TIMLIN, J. (*dissenting*). The town of Shell Lake is authorized to exercise the powers of a village. *Jacobs,* who had a kind of possession of lot 3, block 1, of Lakeside addition to the unincorporated village of Shell Lake under a contract with the town to take such possession and furnish the steam power, fuel, and labor required to operate the waterworks plant and electric lighting plant belonging to the town situate thereon, brought a suit in equity to enjoin the *Lakeside Lumber Company,* a private corporation, from entering upon said lot and digging a ditch across the same and laying a

pipe in said ditch under a contract which the last-named corporation claimed to have with the town later in date than *Jacobs's* contract. By the decision of this court handed down herewith in *Lakeside Lumber Co. v. Jacobs* (*post,* p. 188), it is determined that the *Lakeside Lumber Company* had no legal right under its contract to enter upon said lot, excavate said ditch, or lay said pipe. By the majority opinion in the instant case it is determined that *Jacobs* has no right to prevent by injunction the *Lakeside Lumber Company* from so doing. This condition seems to relegate the parties to wager of battle, and is to my mind so suggestive of error as to call for a closer investigation of the grounds upon which it is determined that one having the rights which *Jacobs* possesses under his contract cannot enjoin a conceded wrongdoer from entering upon the land in question and excavating a ditch across the entire width thereof and laying a pipe therein.

The real ground upon which the decision turns is that the plaintiff, *Jacobs,* has an adequate remedy at law because the damages which he may suffer from the wrongful interference with his possession are not of the kind known in equity as "irreparable." The town is the owner in fee of the lot in question and has thereon its waterworks and electric light plants. The interest of *Jacobs* therein is founded upon a contract dated February 6, 1904, running ten years, and by and under which he agrees with the town for that period to "furnish all power necessary for pumping water from Shell Lake into the mains, cross-mains, and pipes, and will pump water therefrom into the water mains, pipes, and cross-mains as they are now laid, or may hereafter be laid, within the town of Shell Lake, for the use of citizens as now used, for use in case of fire, and for general use, night and day, and to furnish a good and sufficient power at all times for' the purpose of pumping said water and in such manner as to give good, sufficient, and satisfactory service." Then follow provisions whereby *Jacobs* is to furnish all fuel, keep ma-

chinery in repair, etc., and that he is to receive from the town for such services certain fixed compensation.

"It is hereby mutually agreed by and between the parties hereto that said party of the second part, *William Jacobs,* shall be permitted, so long as these presents shall be in force, to maintain and operate upon said premises, and use said power therefor, a sawmill, planing mill, grist mill, machine shop, or other plant which shall be for and to the interest of the general public, so long as the same does not interfere with the operation of the water or electric light plant or furnishing power for the same in accordance with the provisions of this agreement hereinbefore set forth; but it is expressly stipulated and agreed by and between the parties hereto that no structure of any kind shall be built or maintained within thirty feet of what is now known as the new power house. . . . It is mutually agreed by and between the parties hereto, that, in case of the instalment of an electric light plant, that the party of the first part retains the right of possession of so much of said premises as shall be necessary for the instalment, equipment, and operation of said electric light plant. It is further mutually agreed by and between the parties hereto, that the same shall be, that is, the life of this contract shall be, for the full period and term of ten years from March 1, 1904, with the privilege that the party of the second part [*Jacobs*] may immediately enter upon said premises for the purpose of preparing for its operation so long as a clear space is kept at least thirty feet from the pumping station."

The contract contains no words of demise or grant to *Jacobs,* and the foregoing excerpts are quoted for the purpose of showing the nature of the possession of *Jacobs* and the nature of his right to the use of said lot for the purpose of performing his contract. In those days of easy injunctions I suppose there would not be much hesitation in sustaining an injunction against one or more of *Jacobs's* employees who might enter upon this lot and interfere even to a slight extent with his operations under this contract and the carrying on of his lawful business. And it would be easy to find numerous precedents covering just such a case. The town, I think,

as owner in fee and as having a qualified possession of the lot with and through *Jacobs,* could by injunction prevent the digging of this ditch and the laying of the pipe. The trespass is in the nature of waste. The injury is what is considered in equity irreparable. If permitted to continue it would ripen into an easement, and the case would be in this respect exactly parallel in principle to *Richards v. Dower,* 64 Cal. 62, 28 Pac. 113, and cases there cited. This court is committed to the view that the power to prevent injuries of this nature by injunction is to be enlarged rather than restricted. *Miller v. Hoeschler,* 121 Wis. 558, 99 N. W. 228; *Lawson v. Menasha W. W. Co.* 59 Wis. 393, 18 N. W. 440; *Chicago, B. & Q. R. Co. v. Porter Bros.* 72 Iowa, 426, 34 N. W. 286. But if the town would have been entitled to an injunction to restrain the excavation of the ditch and laying the pipe, *a fortiori* is *Jacobs* entitled to such injunction, because, if the legal remedy of the town is inadequate, *Jacobs's* legal remedy is still more inadequate. He has no legal estate in the land. He is but the owner of an incorporeal right. His right against intrusion and interference can be protected only in equity. He comes within the rule of such cases as *Waukesha H. M. S. Co. v. Waukesha,* 83 Wis. 475, 53 N. W. 675; *Schubach v. McDonald,* 179 Mo. 163, 78 S. W. 1020; *Wabash R. Co. v. Hannahan,* 121 Fed. 563; *West Side E. Co. v. Con. T. & E. S. Co.* 87 App. Div. 550, 84 N. Y. Supp. 1052; *Graham v. Horton,* 6 Kan. 343; *Vandemark v. Schoonmaker,* 9 Hun, 16; *Wilson v. Rockwell,* 29 Fed. 674; *St. Paul & S. C. R. Co. v. Robinson,* 41 Minn. 394, 43 N. W. 75; *Walla Walla v. Walla Walla W. Co.* 172 U. S. 1, 19 Sup. Ct. 77.

The court below found, and the finding is sustained by evidence, that "the laying of said steam pipe across said lot would probably seriously affect and injure the plaintiff in carrying out his contract with the town of Shell Lake and in the enjoyment of his rights under such contract." I believe

the judgment below should have been affirmed, and I hope the precedent established by the majority opinion will not be followed, because it tends to limit the remedial powers of the circuit court unnecessarily.