Wilson S. Rupp, Appellee, v. Joe Kirk, Appellant; Lawrence A. Sones et al., Appellees.

No. 45979.

June 16, 1942.

Prichard & Prichard, for appellant.

Sifford & Wadden, for appellee Wilson S. Rupp.

John Mulhall, for appellees Lawrence A. Sones et al.

STIGER, J.— I. Plaintiff and defendants, other than appellant Kirk, are the riparian owners of land along the Missouri River in Monona county. In 1902 plaintiff purchased 200 acres, at which time there was high land between his land and the river. From 1902 to 1927 the river gradually cut to the east, cutting and washing away about 80 acres of plaintiff's land. During this general movement of the river to the east it would occasionally recede, forming bars adjacent to appellee Rupp's land.

In 1927 the river cut appreciably to the east and formed the present high bank on appellee Rupp's land. The same year it began a gradual movement back to the west, cutting away formations in front of it, and, as it receded, built up, by gradual alluvial action, the bar which is the subject matter of this litigation. The formation begins at the high bank on Rupp's land and contains several thousand acres. About 400 acres are involved in this suit. About one-half mile west of the high bank on Rupp's land there is a chute running north and south through this bar. There are several other chutes on this formation.

Appellant asserts title to the bar west of the chute, under certain deeds executed in 1937, which will be later referred to, and adverse possession. He makes no claim to that part of the bar lying between the chute and the high bank on appellee Rupp's land. Appellant claims the bar west of the chute formed as an island in the channel of the river some distance from the Iowa bank in 1916 or 1917, the chute being the old river channel on the east side of the island. He concedes that part of the bar between the chute and appellee Rupp's high bank belongs to said appellee as accretion land.

In Meeker v. Kautz, 213 Iowa 370, 372, 239 N. W. 27, 28, the court said:

"The doctrine of accretion is quite well established and recognized in this State. To constitute an accretion there must be a gradual and imperceptible addition of soil to the shore line by the action of the water to which the land is contiguous. * * * This rule applies to land added to islands, as well as to the mainland."

We reach the conclusion, as did the district court, that as the

river receded in 1927 it formed this bar as accretion land from the shore line of Rupp's land, by the gradual and imperceptible action of its waters, and appellee Rupp has fee title to the accreted land as claimed in his petition.

An experienced civil engineer, familiar with the character of accretion land, its formation and vegetation, surveyed this tract of land, commencing at the high bank on said appellee's land. He testified in part as follows:

"I went across the bar from the high bank to the River, on both the north and south sides of Mr. Rupp's land. I have seen and observed a good many of these formations along the Missouri River. I have observed the character of the soil and the manner in which it lays upon the ground, that is, as to whether there are little hummocks and indentions and things of that kind. I have observed accretions at various stages of formation, that is, like for example, a new sand bar, and a few years later, and at some time after that.

"I have made surveys of this nature for about eleven years and in making this survey observed the nature of the vegetation and formation of the land. The land is a kind of sandy, clay loam with some black loam, and it is covered with willows, cottonwoods and underbrush. The willows and the cottonwoods are the ordinary vegetation formed upon accretion land along the Missouri River.

"I saw indentations and built up sand bars and hummocks and low places across the bar and observed the elevation of the land in comparison to the elevation of the land upon the high bank. The way the ground lies and the formation of the soil indicates that the River formed this land. I have never seen any running water in that chute. In my opinion it is accretion land; land made by the Missouri River and attached to the high bank.

"All along the Missouri River where you have accretion bars forming you sometimes have bayous and chutes in close to the old high bank, where at times there may be water while the bar is forming. These bars close up at the lower end first and leave the upper end open so that water may come in for a time, but the whole formation forms to the high bank, although at

times of high water there might be water come in from the Missouri River for a time. There is nothing peculiar about the presence of the chute on this particular bar as distinguished from other bars along the river. The fact that there may be some water in there does not change the character of the forming bar from the fact that it is still forming by the gradual recession of the river from the old high bank."

Witnesses who have owned land in this vicinity for many years and who were thoroughly familiar with the movements of the river in this vicinity, its cutting to the east from 1902 to 1927, and its gradual western recession from 1927 to its present channel, testified, in substance, that the river formed the present high bank on Rupp's land in 1927; that in moving to the west "the river cut away clean in front of it as it went west and threw in behind it"; that "the river worked west; it was a gradual process; it gradually threw up a bar behind it as it went west. There is a sort of depression out from the Rupp land out from the bar next to the bank. I have observed that in other accretion formations I have seen. It is always that way. I have seen water all over the bar since the river moved to the west of where the chute is. At times of high water the river would cover the whole bar and then there would be water in the chute itself, and it would stay there longer than on the rest of the bar. As the river went down, there would be a little water in there, and finally it would go dry. Since 1927 the river, in moving to the west, cut away whatever was in front of it. The water comes in the chute just in high water in the spring."

A witness for appellant testified:

"At times I have seen running water between the high bank and the forming bar. I have seen that over on my side of the River in Nebraska, and in other places in Iowa, and as a matter of fact, whenever I have seen land forming to the high bank. You always see a chute in there, as a general rule. I knew that bar was just being formed as a new bar. * * * There wasn't a great deal of difference in the way this bar formed than the way a good many other bars have formed in the Missouri River or any particular difference between this chute and other chutes."

The uniform character of the soil, the vegetation and trees, and other physical facts on this tract of land tend to sustain the evidence of plaintiff that the westward movement of the river, which commenced in 1927, cut away formations in front of it from its bed and built this entire bar from the shore line or the most easterly high bank by the process of accretion. The substantial weight of the evidence persuasively supports appellee Rupp's view of this formation and we agree with the following statement of the trial court:

"A consideration of the testimony, composition and texture of the soil, and age and kinds of vegetation bears out plaintiff's position that the entire bar came into existence by gradual process and alluvial action of the river within the past thirteen or fourteen years, the bar being formed from the east high bank of the river and thus accreting to plaintiff's land. This conclusion may be arrived at from a consideration of the evidence and without requiring the aid of any presumption [that the bar was accretion land] as suggested by previous decisions. (Bone v. May, 208 Iowa 1094. Kitteridge v. Ritter, 172 Iowa 55.)"

II. Appellant based his claim to the bar not only on the theory that it was an island but also on certain deeds to him from Tod Funkhouser to the NW¼ of the SW¼ of Section 12, Township 84, Range 47, executed in 1937, and adverse possession.

In 1934, Funkhouser's father conveyed to him said 40-acre tract, which at one time adjoined appellee Rupp's land on the west. However, long prior to this conveyance, the land conveyed had been entirely cut and washed away by the river.

In Payne v. Hall, 192 Iowa 780, 783, 185 N. W. 912, 914, this court said:

"Where the lands of a riparian owner are removed by the gradual process of erosion by the river, the land being no longer capable of identification, but having been carried away entirely, and the river occupies the identical space formerly occupied by the lands of the riparian owner, the title to the land so occupied by the bed of the river passes from the owner of the land to the state."

Appellant concedes in argument that "There was no dispute in the record in the case at bar but what the river, at the time it cut to the east, took out all of the land, gradually, and that none of the land now in dispute is original high bank ground."

Manifestly, the deeds executed in 1937 do not establish in appellant any interest in this bar land.

Funkhouser's father was a tenant on Rupp's land from 1917 to 1934. Funkhouser testified that on and off he lived on some of this bar land for several years, in a tent, and also put up a shack; that he put in a garden and sowed some sweet clover. "I was claiming there ownership of that 40 acres, I was also claiming possession to all of the island. I don't think Mr. Rupp knew that I was living out there."

The witness does not purport to state the length of time or during what years he lived on this bar land. One witness for appellant said Funkhouser lived on the bar in 1926 or 1927. Funkhouser further testified that he lived with his parents on appellee Rupp's land during the time his father had a lease, and helped them with the farm work. Funkhouser left this vicinity when his father's lease expired in 1934.

Appellant did not assert an interest in the land until 1937. He testified that in 1939 he put up a shack and did a little work on the bar, but he further testified that since 1917 he had lived about 6 miles from Rupp's land. It is quite obvious that appellant has not established the elements of adverse possession. —Affirmed.

All JUSTICES concur.