JOE SOLOMON, appellee, v. CITY OF SIOUX CITY and CHICAGO, SAINT PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, appellants; WILLIS M. PRITCHARD et al., intervenor-appellants.

No. 47970.

(Reported in 51 N.W.2d 472)

February 5, 1952.

Rehearing Denied April 4, 1952.

George F. Davis, city solicitor, for appellant City of Sioux City.

Sifford & Wadden, of Sioux City, for appellant Railway Company.

Free, Berry & Free, of Sioux City, for intervenor-appellants.

Stilwill, Brackney, Stilwill & Wilson, of Sioux City, for appellee.

HAYS, J.—Plaintiff is the owner of Lot 11, Block 13, East Sioux City, Iowa, which is located along the Missouri River. He alleges that, by accretion, land has been built extending from said lot in a southwesterly direction some 300 feet to the high bank of the river, and asks that title be quieted in him as against the claims of defendants and intervenors. Defendants and inter-venors claim title to said land under a patent from the State of Iowa, dated 1940, to defendants. There was a decree quieting title in plaintiff as against defendants and intervenors but not establishing the lines of said tract because of the absence of possible interested parties. All parties have appealed. Hereinafter, references to appellants designate defendants and intervenors unless otherwise stated.

The original plat of East Sioux City (1856) shows Block 13 to be located some distance from the then high bank of the river. Appellee purchased Lot 11 in 1930, has been in continuous possession thereof since such purchase. Lot 12, to the north, and Lot 10, to the south of Lot 11, were then and are now owned by the Chicago, Saint Paul, Minneapolis & Omaha Railway Company, one of defendant appellants. In 1932 a survey, plaintiff's Exhibit E, shows that all of the land originally separating Lot 11 from the river has been engulfed thereby and the then existing high bank (1932) extended through the said Lot 11 in a northwesterly direction from a point on the south line of said lot approximately 72.5 feet east of the southwest corner thereof and running at an angle to a point on the north line thereof approximately 25 feet east of the northeast corner. Lots 10, 11 and 12 were originally each 150 feet east-and-west by 50 feet north-and-south. They front on Iowa Street to the east.

In 1932 the Federal Government in the furtherance of navigation on the river erected a series of dikes or jetties, commencing a short distance out in the river from the then high bank and extending into the river some 300 feet. These dikes were located both above and below where the river cut across appellee's Lot 11. The outer edge of these dikes was the point established by the Government as the new channel line. By 1935 there was built up the tract of land in question.

In 1937 appellant City of Sioux City, under chapter 303, Code of 1935 (now chapter 384, Code of 1950), created a Depart-

ment of Public Docks. In 1940 the City received a patent from the State of Iowa which granted to it certain land between the new channel line, above-described, and a point 300 feet, measured at right angles thereto, toward the old high bank of 1932. The grant extended from Wall Street, on the south and east, upstream to Virginia Street, on the north and west, and included therein the tract between Lot 11, under the 1932 survey, and the new channel line. At the same time, by a patent, the State of Iowa granted to appellant Railway Company, among other land, the tract which lay between the high bank of 1932 and the above described 300-foot line, which included a narrow strip of land between what remained of Block 13, under the 1932 survey, and the 300-foot line. In 1941 appellant City received a quitclaim deed from appellant Railway Company to the tract described in the patent from the State to the City. It also received quitclaim deeds to said tract from all other riparian owners in the immediate vicinity, except appellee. In 1941 appellant-intervenors, being the Dock Board of Sioux City, by Ordinance No. 1, proclaimed the tract covered by the patent to the City to be the property of the City and under the exclusive control and jurisdiction of said Dock Board, including therein the land claimed by appellee. Thus, this action.

Appellants rely for a reversal primarily upon two propositions: (1) The land in question is not accretion. (2) Rights of the public supersede the rights of the individual riparian owner.

It is conceded by all parties that the Missouri River was and is a navigable stream. The State of Iowa, in the absence of a conveyance thereof, is the owner of the bed or channel of this river from the center or thread thereof to the high-water mark of the stream. Preamble, Constitution of Iowa; State of Iowa v. State of Illinois, 147 U. S. 1, 13 S. Ct. 239, 37 L. Ed. 55; Payne v. Hall, 192 Iowa 780, 185 N.W. 912; Sioux City v. Betz, 232 Iowa 84, 4 N.W.2d 872. While it is claimed by appellants that due to the rapidity with which the channel shifts in the Missouri River the doctrine of accretion does not apply, generally speaking, there is no merit to this claim, as it is well established otherwise. McFerrin v. Wiltse, 210 Iowa 627, 231 N.W. 438; Arnd v. Harrington, 227 Iowa 43, 287 N.W. 292; State of Nebraska v. State of Iowa, 143 U. S. 359, 12 S. Ct. 396, 36 L. Ed. 186.

 Title by accretion is recognized in this State. Rupp v. Kirk, 231 Iowa 1387, 1388, 4 N.W.2d 264, 265, states:

" 'The doctrine of accretion is quite well established and recognized in this State. To constitute an accretion there must be a gradual and imperceptible addition of soil to the shore line by the action of the water to which the land is contiguous.' "

See also Coulthard v. Stevens, 84 Iowa 241, 50 N.W. 983, 35 Am. St. Rep. 304.

 The term "high-water mark" has a definite meaning. In Meeker v. Kautz, 213 Iowa 370, 372, 239 N.W. 27, 28, it is said:

" 'High-water mark means what its language imports—a [high] watermark. It is co-ordinate with the limit of the bed of the water; and that, only, is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes.' "

In the light of the above stated general propositions we will examine the specific questions presented here.

 I. Appellants assert that the trial court erred in holding that the tract in question was accreted land to Lot 11. It is their contention that the land was built not by addition of the soil to the shore line by the action of the water, but is the result of addition to the bed of the river at the outer edge of the dikes or jetties and working toward the shore line therefrom. In Holman v. Hodges, 112 Iowa 714, 84 N.W. 950, 58 L. R. A. 673, we had a situation where an island formed in the channel of the stream and by accretion thereto a bar was formed to the high-water mark. We held that the riparian owner gained nothing thereby. See also Rupp v. Kirk, supra. There is a sharp and substantial conflict in the evidence regarding the starting point of this newly built tract of land. We have examined the record, and while we do not deem it necessary to set forth the conflicting testimony we are satisfied with the finding of the trial court upon this question and hold that the tract in question is accreted land to Lot 11 within the recognized definition thereof. As to the rapidity with which the tract was built, under appellants' claim that it was not a gradual and imperceptible growth, the period

of time in question was about three years. We think this question is answered in McFerrin v. Wiltse, 210 Iowa 627, 231 N.W. 438, and State of Nebraska v. State of Iowa, 143 U. S. 359, 12 S. Ct. 396, 36 L. Ed. 186, both supra.

II. Appellants further claim that conceding the tract to be accreted land, it was built by artificial means and under the law of this state does not belong to the abutting riparian owner. (Citing Chicago, B. & Q. Ry. Co. v. Porter Bros. & Hackworth, 72 Iowa 426, 34 N.W. 286, and Board of Park Commrs. v. Taylor, 133 Iowa 453, 108 N.W. 927.) The latter case is where the admitted filling in of the river bank was done by the claimant, and rights of a riparian owner were denied to him. The Porter case merely holds that the lawful appropriation of the submerged land or bed of the river cut off accretions to defendant's land and established a line beyond which no right of accretion can be acquired. Neither of the cited cases is in point.

Apparently the question of title by the riparian owner to accreted land, built by artificial means over which he had no control, has not been decided by this court, although in Board v. Taylor, supra, the question is indirectly mentioned. In an exhaustive annotation in 134 A. L. R. 467, 468, dealing with riparian owners, it is stated as a general rule that "a riparian owner is not precluded from acquiring land by accretion or reliction, notwithstanding the fact that the accumulation is brought about partly by artificial obstructions erected by third persons, where the riparian owner had no part in erecting the artificial barrier." We think it is a sound rule, especially in view of the fact that we recognize that the riparian owner has a right which can only be taken from him in accordance with established law; and if necessary that it be taken for public good, upon due compensation. See Hohl v. Iowa Cent. Ry. Co., 162 Iowa 66, 143 N.W. 850, and Plattsmouth Bridge Co. v. Globe Oil and Refining Co., 232 Iowa 1118, 7 N.W.2d 409.

It is conclusively established in the record and recognized by the trial court that the land in question was created by the slowing down of the current of the stream, due to the dikes or jetties built by the Government. While it is admitted that appellee did some filling in along the new tract and permitted others to do likewise, it appears that this filling in was done between

the new and the old high bank, a sort of leveling-off process, and did not aid in the establishment of the new high bank. We hold in accordance with the rule announced in 134 A. L. R. 467, 468, supra, that accretion due to artificial means over which a claiming riparian owner has no control belongs to the riparian owner in the same manner as naturally accreted land.

.III. Further, appellants contend that the rights of the public are paramount to those of the individual and that their title under the patent is superior to appellee's.

■ A Government patent is not conclusive that the Government owned the land at the time of the patent, although it is of the highest evidence of title; and Government lands lose and gain by accretion the same as an individual riparian owner. Mc-Ferrin v. Wiltse, supra; Bigelow v. Herrink, 200 Iowa 830, 205 N.W. 531.

■ The record shows that in 1856 the high bank of the river was some distance to the south of Block 13. In 1932 the river had shifted so that the high bank of the river had cut across Lot 11 engulfing the intervening land. At that time the State of Iowa owned from the thread of the stream to that high-water mark which included the land described in the 1940 patent. However, by 1940, when the patent was issued, the channel had shifted to the extent that the high-water mark was the new channel line, above referred to. It is thus evident, in view of our holding under Divisions I and II hereof, that the title of the State to the river bed shifted as the accretion grew and in 1940 its title to the land to the north and west of the new channel line had been wiped out and became vested in the riparian owners along the 1932 high-water mark. It may be that it was this knowledge on the part of appellant City that activated the obtaining of the quit-claim deeds from the various riparian owners above-mentioned.

Appellants refer to the authority granted the City under chapter 303, Code of 1935, and subsequent amendments thereto. These statutes clearly limit the control and jurisdiction of the City and Dock Board to property *owned* by the municipality and grant to the City the power of condemnation over land required for public use, but to which it does not have title. Hohl v. Iowa Cent. Ry. Co., 162 Iowa 66, 143 N.W. 850, supra; Kraut v. Crawford, 18 Iowa 549, 87 Am. Dec. 414. We hold that as

to the accreted lands connected with Lot 11, Block 13, the patent in 1940 granted nothing to appellant City; that the right of appellee is superior to the right of the appellants under the patent; and the decree of the trial court in that respect is correct.

Appellants have urged several other propositions as a basis for a reversal, including a claim of error in restricting examination of an alleged hostile witness. We have examined these alleged errors and find no merit therein.

IV. As before stated, appellee has also appealed from that part of the decree wherein the court failed to determine the boundaries of the accreted land granted to plaintiff.

Appellee's petition states: "Par. 5. That commencing on or about the year 1931 accretions commenced * * *, said accretions forming and extending in a southwesterly direction from said Lot Eleven approximately three hundred feet * * *." The prayer of the petition is that defendants be barred from asserting any title to said premises and that title be quieted in plaintiff. It will be noted that the petition does not allege, nor the decree name, any definite amount of land nor the boundaries thereto. Plaintiff's Exhibit M is a plat showing Lots 10, 11 and 12, Block 13, with the 1932 high-water mark together with the area between such high-water mark and the new high-water mark, or new channel line. The boundary line to the east and west thereof is shown by an extension of the original east-and-west boundary of Lot 11 to the new channel line on the south.

In Todd v. Murdock, 230 Iowa 1121, 1125, 300 N.W. 284, 286, we said: "In apportioning accretion a principal object to be attained is the retention, as nearly as possible, of the former means and right of access to the water. The general rule is to give the several riparian owners a frontage on the new shore proportional to their respective frontages on the old one, connecting the respective points by straight lines", citing Berry v. Hoogendoorn, 133 Iowa 437, 108 N.W. 923. In the cited case we said: "We understand from the authorities on the subject that it would be necessary to ascertain the length of the new shore line between the points of its departure from the old shore line and the length of the corresponding portion of the old shore line, so that the new line might be apportioned in parts corresponding to the parts of the old shore line belonging to the

different owners." (Page 442 of 133 Iowa, page 926 of 108 N.W.)

Under the record, in view of the quitclaim deeds from various riparian owners, it would appear as though the only parties interested would be the appellee and appellant City. It also would appear from the record that the plat (plaintiff's Exhibit M) is an improper method of measurement, as the lines are to be from a point on the old watermark to a corresponding point on the new line instead of merely an extension of lot lines. It also appears that the City may have title to a portion of the area to the south of Lot 11, due to appellant Railway Company's ownership of Lot 10 and its quitclaim deed to the area to the south thereof. Under this record it further appears that appellee's right may extend to the west of a line drawn south from the original west line of Lot 11, Block 13.

This case differs from the Hoogendoorn case, supra. There though the system of measurement used was incorrect this court accepted it, stating (page 443 of 133 Iowa): "We are satisfied that the court gave plaintiff all that he showed himself entitled to under the evidence, and that is all we can do." In the instant case we think the appellee has shown himself entitled to more than was granted by the decree, i. e., to have the definite boundaries established between his property and that of the other owner or owners. This is an equity action and while the burden is upon the appellee to establish his case, we do not agree with appellants' contention that appellee has failed to establish his case and his petition should be dismissed; rather, we think equity and good conscience require that this case be returned to the trial court for further hearing, if necessary, and establishment of a definite boundary line to the east and west of the accreted land in question.—Affirmed upon defendants' and intervenors' appeal; reversed and remanded on plaintiff's appeal for further action, as above-indicated.

THOMPSON, C. J., and GARFIELD, BLISS, WENNERSTRUM, MULRONEY and MANTZ, JJ., concur.

SMITH, J., not sitting.