**Dan J. MATHER, Appellant,**

v.

**STATE of Iowa et al., Appellees.**

**Dean Dennis CHRISTENSEN and Lynette Joy Christensen, husband and wife, et al., Appellants,**

v.

**WOODBURY COUNTY, Iowa, et al., Appellees.**

**No. 54965.**

Supreme Court of Iowa.

Sept. 19, 1972.

Charles N. Woolery, Sergeant Bluff, and Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellant, Dan J. Mather.

Kindig, Beebe, McCluhan & Rawlings, Sioux City, for appellants, Dean Dennis

Christensen, Lynette Joy Christensen, Lee A. Christensen and Jeanne Marie Christensen.

Michael Murray and Manning Walker, Special Asst. Attys. Gen., for appellee, State of Iowa.

William E. Adams, Sioux City, for appellee, Woodbury County, Iowa.

LeGRAND, Justice.

This is a quiet title action seeking to settle ownership of lands formed by accretion along the Missouri River at a location known as Omadi Bend in Woodbury County.

Plaintiffs are riparian owners who claim the land accreted to their shores. The State of Iowa, on the other hand, resists this claim and by cross-petition asserts the land in question attached to an island in the Missouri River. Several actions, started independently, were consolidated for trial. Since the issues raised are common to all plaintiffs, we discuss them as though there were only one action.

The trial court quieted title in the State. On this de novo appeal, we affirm that decree.

The dispute is almost entirely factual. The parties agree generally on the legal principles involved, relying on the same authorities to sustain their opposing positions. Before setting out the facts which are determinative of this appeal, we state the general law which must govern our conclusion:

■■ (1) Accretion results from a gradual and imperceptible addition to the shoreline by action of the water to which the land is contiguous. Land may accrete to an island or to the riverbed itself as well as along the shoreline.

■■ (2) One who owns land fronting on a navigable stream owns to the ordinary high water mark. The term "ordinary high water mark" has been defined as

being "co-ordinate with the limit of the bed of the water, and that, only, is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation and destroy its value for agricultural purposes."

■■ (3) The State owns the river bed from the ordinary high water mark to the center or thread of the stream. Land which accretes to an island in a navigable stream or to the bed of the stream itself becomes the property of the State.

■ (4) Land which accretes at or above the ordinary high water mark becomes the property of the landowner to whose shore it attaches.

■ (5) The right to accreted land is the same whether it results from natural causes or from artificial means over which the owner has no control.

Support for all of these precepts may be found in the following authorities to which reference is made throughout this opinion: Dartmouth College v. Rose, 257 Iowa 533, 133 N.W.2d 687 (1965); State v. Raymond, 254 Iowa 828, 119 N.W.2d 135 (1963); Sieck v. Godsey, 254 Iowa 624, 118 N.W.2d 555 (1962); Tyson v. State of Iowa, 8 Cir., 283 F.2d 802 (1960); Rand v. Miller, 250 Iowa 699, 95 N.W.2d 916 (1959); Wilcox v. Pinney, 250 Iowa 1378, 98 N.W.2d 720 (1959); Solomon v. Sioux City, 243 Iowa 634, 51 N.W.2d 472 (1952); Rupp v. Kirk, 231 Iowa 1387, 4 N.W.2d 264 (1942); Meeker v. Kautz, 213 Iowa 370, 239 N.W. 27 (1931); Payne v. Hall, 192 Iowa 780, 185 N.W. 912 (1921); Holman v. Hodges, 112 Iowa **714,** 84 N.W. 950 (1901); 65 C.J.S. Navigable Waters § 82(2), page 257; 56 Am.Jur., Waters, section 486, page 899; 45 Iowa Law Review 945; 42 Iowa Law Review 58; Annot. 134 A.L.R. 467 (1941).

Our task now is to apply these rules to the particular conditions shown by this record. The evidence consists not only of voluminous oral testimony but of numerous

plats, maps, photographs and other exhibits. While there is little dispute about the applicable law, there is complete disagreement as to how—and where—the accretion occurred. Few cases illustrate better the truth of this statement made in Sieck v. Godsey, supra, 254 Iowa at 629, 118 N.W. 2d at 559:

> "Accretion is a subject which lends itself readily to disputed questions of fact and honest differences of opinion as to when, where, and how much of it has taken place. * * *"

Those "honest differences of opinion" are what this case is all about; and, as has been said many times, the question is factual, to be arrived at after a consideration of all the relevant testimony. Tyson v. State of Iowa, supra, 283 F.2d at 809.

The stage for this litigation was set in 1959 when the United States Corps of Engineers decided to try, once more, to control and stabilize the "wild" Missouri River. Other efforts to do so had failed for one reason or another, most recently because of more pressing duties imposed upon the corps by World War II. Now a new project was initiated which it was hoped would be beneficial in many areas —flood control, navigation, production of power, and recreation.

The ultimate purpose was to narrow, deepen and stabilize the channel at a pre-determined width of 600 feet and a pre-determined depth of nine feet by a series of pile dikes projected from the shore out into the river bed. These dikes are built by driving a series of wooden pilings into the river. Rock is then dumped along the pilings to form a dike to divert the water. The action of the river against these dikes is the sole cause for the accretion about which this case revolves.

The construction of these dikes and the manner in which the river reacted to them are described in detail in the evidence. For our consideration of the case, however, it is enough to say they resulted in slowing the flow of the river, causing sediment and silt to be deposited on the downstream side of the dikes. In time there is a build-up of land which eventually fills in the area between the dikes. The rate at which the deposit accumulates depends upon a number of factors, including the flow of the river, the incidence of flood and overflow, weather conditions, and surface drainage.

The evidence shows the deposits start at the approximate center of the dike and work both inward and outward from that point. The consequent build-up of solid land from 1959 until the time of trial in 1970 was considerable. It was also valuable and became coveted by both the riparian owners and the State. Under the rules we have previously set out, if this land attached to an island in the river or to the river bed itself, it is owned by the State. If it accreted along the ordinary high water mark, title vested in the riparian owners. We are asked to find the right answer to this deceptively simple question.

■ One matter to be determined is whether an island existed to which accretion can be claimed, since this is the theory upon which the State asserts ownership. Not every body of land which protrudes above the surface of the water is an island. This is particularly true with an undisciplined river such as the Missouri, where, as the evidence shows, sand bars might come and go on a day-to-day basis.

■ An island is traditionally defined as a body of land completely surrounded by water. 56 Am.Jur., Waters, section 504, page 911; Payne v. Hall, supra, 192 Iowa at 786, 185 N.W. at 915. However, before an island can support a claim of ownership by accretion it must be able to show some permanence of its own. In Payne v. Hall we referred with approval to McBride v. Steinweden, 72 Kan. 508, 83 P. 822, 824 (1906), where it was held a body of land must have characteristics of permanence to constitute an island. It is not enough that it be surrounded by water

only when the river is high and connected with the mainland when the river is low. In deciding if this test has been met, all the surrounding circumstances under which accretion occurred should be taken into account—the extent of the accretion itself, the growth of trees and vegetation, the nature of the water which surrounds the body of land, the topography of the land, and the testimony of the witnesses concerning its appearance, identification and permanency. See Holman v. Hodges, supra; Tyson v. State of Iowa, supra, 283 F.2d at 808; and State v. Raymond, supra, 254 Iowa at 832–834, 119 N.W.2d at 137.

We agree with the finding of the trial court that the evidence here compels a finding there was in existence at all times material to this case a body of land which qualifies in all respects as an island to which the disputed land could accrete. The photographic evidence and the testimony of numerous witnesses establishes this fact beyond serious dispute. Admittedly the evidence is not conclusive but we hold, as did the trial court, that it clearly preponderates in favor of the State.

The next and ultimate question is the place at which accretion occurred. On this issue the trial court made extensive findings of fact from which we quote at length:

"The plaintiffs * * * were riparian owners along the Missouri prior to the beginning of the work on the new designed channel. * * *

"In August of 1959 there was a bar or island riverward some distance and slightly northerly of Dike 792.6 [opposite plaintiff Mather's land] as shown in Exhibit 22, a photograph thereof on August 18th, [1959]. The dike was not then completed, but as it moved on out into the river and along the southerly border of the island, the island remained in place so that by July of 1961 when the photograph Exhibit 23 was taken, it abutted the dike and a considerable body

of land had formed and attached to it between the dike and [other] dikes northerly and to the south and west of the [plaintiffs'] * * * property. * * * The area of this island remained identifiable and in place from the time work on dike 792.6 started forward and was identified and marked by witnesses on numerous photographs in evidence. It was further identified by topography and by elevations run from the ordinary high water mark riverward. Furthermore a section of a diamond willow tree, growing on the island area, was taken and examined by a professor of forestry at Iowa State University who testified that by counting its annual growth rings, he determined the tree started to grow eleven or twelve years ago. * * * The location of the diamond willow is marked on aerial photographs Exhibits 22 and 28A, and is shown in other ground photographs. There is no doubt in the court's mind that the island was in place at the time or before the dikes were started and that build-up of land from the river bed attached to and surrounded it so there developed a body of land * * * that is now almost completely tree and vegetation covered. * * *

\* \* \* \* \* \*

\* \* \* \* \* \*

The court has carefully considered all of the testimony introduced and concludes that it compels a finding that land in the area in question formed by accretion to an island which existed in the river prior to the completion of the work on the dikes in connection with the 1960 designed channel and by the formation of other independent islands or land masses. Either or both formations—accretion to an existing island or the formation of new islands by accretion to the bed of the stream—are the property of the State. Under the law it was not necessary for the State to show accretion to an existing island. If land arises from the bed of the river, is in being, and has

characteristics of permanence, such land belongs to the State which owns the bed of the stream just as surely as land which accretes to an existing island. This occurred here. The area supported vegetation, grew trees, exhibited upland characteristics, and existed as land in place long before there could be any contention that any land had accreted to the old shore line."

We hold the record fully supports these findings. Indeed it is difficult to see how the trial court could have reached any other conclusion consistent with the evidence. Photographic evidence, tree samples, and the testimony of various witnesses, both lay and expert, lead inevitably to the conclusion that there *was* an island in the stream since at least 1959 and probably sooner; that it had permanence and stability and remained constantly identifiable from at least 1959 until the time of trial; that the channel of the river surrounded it until such time as the accretion itself worked a closure of the channel, as it was designed to do; and that it supported growth of vegetation and trees for many years.

Under this record, we have no hesitancy in holding that the dikes caused land to accrete first to the island owned by the State. Even if the extension continues inward until it eventually joins with plaintiffs' shore, still they would be entitled to no title by accretion. Solomon v. Sioux City, supra, 243 Iowa at 638, 51 N.W.2d at 475, and authorities cited. That is plaintiffs' unfortunate situation here and they can take no solace from the admitted fact that the process of accretion was going on simultaneously both toward the shore and toward the island. The rule is stated this way in 65 C.J.S. Navigable Waters § 82(4), page 260:

"Ordinarily, in order to entitle a riparian owner to accretions they must begin to form from his land, and not from some other point so as eventually to reach his land."

One solid reason for this is that no title by accretion occurs until the land surfaces above the water at the ordinary high water mark. Dartmouth College v. Rose, supra, 257 Iowa at 536, 133 N.W.2d at 687; State v. Raymond, supra, 254 Iowa at 830, 119 N.W.2d at 137. Even if we accept plaintiffs' argument that the dike-made land now attaches to their shore, they would take nothing because it is indisputably shown that accretion to the island had started and developed extensively long before.

We hold the trial court was correct in finding plaintiffs had failed to sustain their burden of proving ownership by accretion and in decreeing title to be in the State of Iowa.

We have made no mention of the defendant Woodbury County, whose only interest is to protect its tax lien. The parties stipulated that the lien should remain against the property regardless of how the title dispute was decided. The defendant County therefore has no interest in the outcome of this appeal.

There is one other issue argued on appeal. Plaintiffs state they have been deprived of a valuable property right without compensation. This issue was neither raised nor argued in the trial court. There is nothing before us for review on this issue. Katko v. Briney, 183 N.W.2d 657, 662 (Iowa 1971); Ke-Wash Company v. Stauffer Chemical Company, 177 N.W.2d 5, 9 (Iowa 1970).

For the reasons heretofore stated, we affirm the judgment of the trial court.

Affirmed.

All Justices concur, except RAWLINGS and McCORMICK, JJ., who take no part.